T. L. EMERY and wife v. THE RALEIGH AND GASTON RAIL-
ROAD COMPANY.

*Issues—Verdict must sustain the judgment—Negligence in con-
struction of culverts—Contributory negligence, what constitutes,
and when to be declared by the Court, or left to the jury with
instructions—Evidence—Condemnation proceedings, how far
an estoppel—Prescription for an easement.*

1. Ordinarily, it must be left to the sound discretion of the Judge,
whether to submit specific issues so that the findings will be in the
nature of a special verdict, or to confine the inquiry to one, or a
small number of issues, in imitation of the common law practice,
provided, always, that the issues submitted must be those raised
by the pleadings.

2. It is misleading to embody in one issue two propositions, to which
different responses might be made. A new trial will be granted
if such an issue is submitted, exception being taken thereto in apt
time.

3. The verdict, whether in response to one or many issues, must estab-
lish facts sufficient to enable the Court to proceed to judgment.

4. When the verdict establishes facts sufficient to sustain the judgment,
and it appears that issues tendered by a party were refused, but
the jury were told by the Judge how the testimony relating to
the rejected issues bore in law upon the issues submitted, a new
trial will not be granted.

5. No limit will be imposed upon the discretion of the *nisi prius* Judge
in settling issues, except that the facts established by the verdict
shall be sufficient to sustain the judgment, and that a party must
be given an opportunity to have the law, applicable to any mate-
rial portion of the testimony fairly presented to and passed upon
by the jury, through the medium of some issue.

6. It is the duty of a railroad company to so construct its culverts that
they will carry off the water of the streams over which they are
built under all ordinary circumstances likely to occur in the usual
course of nature, including such heavy rains as are ordinarily
expected, although of only occasional occurrence. But it is not
liable for damages resulting from its culverts being insufficient to
carry off the overflow caused by extraordinary and unusual rain-
falls.

102—14

7. The reputation for intelligence and skill of a civil engineer, under whose direction a culvert was built, cannot be shown in evidence on the trial of an issue as to whether the culvert was *in fact* so constructed as to carry off the water except in cases of excessive rain-falls.

8. Where the issue was as to whether a culvert was of proper size, and the defendant railroad company examined as its witness an expert, who stated that he built the culvert, and it was the largest one he had ever built: *Held*, that it was proper to permit the plaintiff to show that another corporation had built a larger culvert over the same stream, a short distance below the culvert in controversy.

9. Where the owner of a tract of land had his brick-yard on the premises, and his crops submerged with water by reason of the negligent construction of a railroad culvert, he is not guilty of contributory negligence when he afterwards constructs a brick-yard in the same place and plants a crop on the same land, both of which are again submerged from the same cause. Because a culvert was negligently constructed by a railroad company, and plaintiff knew it, is no reason why plaintiff should have abandoned his land and ceased all effort to utilize it.

10. It is often difficult to determine when the evidence in a case crosses the shadowy line and compels the Court to take the case from the jury and declare as the law that contributory negligence has been proven. Such rule applies only when the facts are *ascertained.* When there is any *conflict in the testimony*, the courts will lay down the rules of law and define the standard of *care* necessary; but leave the jury to decide whether, under the circumstances, proper care was exercised.

11. Proceedings for the condemnation of land for the right of way of a railroad company will not operate as an estoppel in an action brought by a party to such proceedings to recover damages to his lands resulting from the negligent construction of a culvert by the company.

12. The right to have and maintain a culvert, so constructed as to cause plaintiff's land to be overflowed, can be acquired by a railroad company by proof of twenty years' user. But the user must have been such as to have subjected the company to an action *at any time during the twenty years*, and it must be shown that the overflow has, at regular or irregular intervals during the twenty years, *covered the very land* in controversy.

CIVIL ACTION, tried before *Graves, J.,* at May Term, 1888, of the Superior Court of HALIFAX County.

There was a verdict for plaintiff, and the defendant appealed to the Supreme Court.

The pleadings were as follows, omitting immaterial portions of them:

The plaintiff, complaining of the defendant, alleges:

" 1. That the defendant is a corporation, duly chartered and organized under an act of the General Assembly of North Carolina, passed at its session in 18__, and acts amendatory thereof.

" 2. That the plaintiff Emma J. intermarried with Thos. L. Emery many years prior to the year 1884.

" 3. That the *feme* plaintiff is the owner of, and, for some years prior to 1884, has been the owner of a valuable farm, adjacent to the town of Weldon, and lying upon Chockeyotte Creek, and upon the upper or south side of the roadbed of the defendant, which said farm is commonly known as the ' Model Farm.' .

" 4. That the defendant's tract passes over said Chockeyotte Creek, and the defendant, more than three years prior to the beginning of this action, negligently constructed a culvert under its said tract for the passage of the waters of said creek, which they have maintained ever since, to the great nuisance of the plaintiff.

" 5. That in times of freshets or excessive rains the said culvert is entirely too small for the free passage of the waters of said creek, so that the said stream becomes dammed and choked up, and the waters thereof are ponded back upon the plaintiff's land, to its great injury and diminished productiveness for purposes of agriculture.

" 7. That in the fall or late summer of 1885, the said defendant wrongfully and negligently, by means of its said culvert as aforesaid, caused the waters of said creek to pond back upon plaintiff's land and brick-yard situated thereon,

and destroyed 175,000 brick, the property of the plaintiff, standing thereon, worth five dollars per thousand, and accumulated clay and *debris* upon the said brick-yard of the plaintiff, to her damage one thousand and seventy-five dollars.

" 8. That about May or June, 1887, the said defendant wrongfully and negligently, by reason of its said culvert as aforesaid, caused the waters of said creek to pond back upon the plaintiff's land and brick-yard situated thereon, and destroyed 75,000 brick situated thereon, the property of plaintiff, worth five dollars per thousand, and accumulated clay and *debris* upon said yard, to her damage four hundred and seventy five dollars, and destroyed the plaintiff's crop growing upon said land, to her further damage nine hundred dollars.

" 9. That, about the last of October or first of November, 1887, the said defendant negligently and wrongfully caused the water of said creek to pond back upon the plaintiff's land and brick-yard as aforesaid, by means of said culvert, and destroyed 15,000 brick, the property of plaintiff, standing upon said yard, which said brick were worth five dollars per thousand, and accumulated clay and *debris* thereon, to the plaintiff's damage one hundred and twenty-five dollars.

" 10. That the annual damage to the plaintiff's crops of grass, oats, corn, &c., has been five hundred dollars per year for the past three years.

" Wherefore, the plaintiff prays judgment for four thousand dollars damages and costs."

The defendant, answering the complaint herein, says:

" 1. That sections 1 and 2 are admitted.

" 2. That section 3 is admitted, with the following modification, *i. e.*: that the farm of the plaintiff, known as the 'Model Farm,' does not abut on or touch the road-bed or right of way of the defendant.

" 3. That section 4 is denied as therein charged, and in answer thereto the defendant says, that more than twenty

years before the commencement of the plaintiff's action, the defendant caused to be constructed over the said creek, by skillful engineers, and with the utmost care, the said culvert as a part of its road-bed and track, which it was duly and legally authorized to do ; and this defendant is informed and believes, and so avers, that the said culvert in no way obstructs or impedes the natural flow of the water in and along said creek, but, on the contrary, the capacity of said culvert exceeds many times the capacity of the channel of said creek; and this defendant denies that it has unlawfully, negligently or wilfully erected or maintained any nuisance to the plaintiff by the construction of said culvert.

"4. That section 5 of the complaint is not true, and is denied, and, further answering said section, this defendant says that the culvert of the defendant exceeds many times the natural capacity of said creek, and that the overflow of the plaintiff's said land is caused by the negligence of the plaintiff in not removing obstructions from and near the bed of said creek, so as to allow a free discharge of the surplus waters thereof, all of which said obstructions are above the defendant's culvert and right of way.

"5. That section 7 of the complaint is not true, and is denied, and, as a further answer thereto, this defendant says, that prior to placing their brick-yard on said ' Model Farm,' the plaintiffs well knew that said yard was subject to overflow, both from the Roanoke River and said creek, in times of freshets therein, and the defendant alleges that the plaintiffs were guilty of contributory negligence in placing their said brick-yard on said farm.

"6. That section 8 of the complaint is not true, and is denied, and, further answering said section, this defendant says that the damages to said plaintiff's brick-yard and bricks was caused by the contributory negligence of plaintiff, as set out in section 5 of this answer; and that as to the alleged damages of the plaintiff's growing crops, if any,

this defendant alleges the same was caused by the negligence of the plaintiff in not causing his said land to be properly drained, and in not removing obstructions to the flow of the water in said creek.

"7. That section 9 of the complaint is not true, and is denied, and, for further answer thereto, this defendant adopts the next two preceding sections of this answer as an answer thereto.

"8. That section 10 of the complaint is not true, and is denied, and, for further answer thereto, defendant alleges that the alleged damage to plaintiff's crop, if any, was caused by the negligence of the plaintiff, as hereinbefore set out and pleaded."

And for a further defence to the plaintiff's said action, this defendant says:

"That the alleged damages charged in complaint, if any, were the result of unusual and excessive rain, which no care, caution or foresight of the defendant could have prevented, and the defendant alleges that it was guilty of no negligence or want of due care in the construction and maintenance of its said culvert; and for a further defence this defendant says that more than twenty years before the commencement of this action, it erected its said culvert of its present dimensions, and has been in the peaceable and undisturbed possession and maintenance thereof since then up to the bringing of this action, and that the then owner of the plaintiff's land assented and agreed to the building of said culvert."

Wherefore, defendant asks judgment, that he go without day, and for his costs.

The plaintiff, by leave of the Court, amends his complaint by striking out, in section 5, line 2, the word "excessive," and inserting in lieu thereof the word "heavy."

The plaintiff offered issues numbered one and two, and the defendant offered issues numbered three and four.   The

issues thus submitted were approved by the Court and submitted to the jury.   After the charge, and before the jury retired, the Court directed issue number four to be divided, and the issues submitted were as follows:

"1. Has the defendant negligently ponded water back upon the plaintiff's land?

"2. If so, what damage has plaintiff sustained thereby?

"3. Have the plaintiffs been guilty of contributory negligence?

"4. How long has defendant been using the culvert in its present condition ?

"5. And has the user given the defendant an easement in the lands of plaintiff?"

Defendant excepted.

The defendant asked that this issue be submitted to the jury :

"What was the depth of rainfall on 10th May, 1887 ?  Was the rainfall of 10th May, 1887, excessive and extraordinary?"

This was refused, and the defendant excepted.

The defendant asked to have this issue submitted to the jury :

" What damages did plaintiff sustain by the ponding back of the water on that occasion ?"—meaning 10th May, 1887.

The Court declined to submit this issue, and defendant excepted.

There was much evidence offered on both sides, and it seems material to set out a good deal of it in order to point out the several exceptions made.   The complainant, T. L. Emery, testified :   " My wife owns and had owned the land known as 'Model Farm' fourteen years at the time of bringing this suit.   That the tract of land did not adjoin the railroad track of defendant, but lies to the south of the road, on Chockeyotte Creek, above the culvert.   The culvert at the base is 16 feet wide.   The stream just above the culvert is 26 feet wide.   The length of the embankment is

more than one hundred feet. Close to the culvert, below, the creek is 25 or 26 feet wide, and then it widens out and deepens, being 36 feet wide. Seemed to be 8 or 9 feet deep. We measured from water's edge when low, 12 inches above low water, spreads out a hundred or two feet. There is eddy or back water within a foot or two of lower edge of culvert. I noticed that the water rushes through and had undermined the culvert, so that some of the large stones of which it was built have cracked.".

The plaintiff then offered to prove that some 200 yards below, on the same stream, the Roanoke Navigation Company had constructed a culvert before defendant, which is 26 feet wide, but upon objection, this testimony was then excluded.

The witness then testified that, in time of heavy rains, when the creek is swollen, the water is ponded back on the land; that much of the land is rich, alluvial land—that it is not all low bottom; that on the land is clay suitable for making bricks; that he had made a brick-yard; that in the fall of 1885, he had been damaged by the ponding back of water on the land—that his crop was injured and he had lost 175,000 unburnt, sun dried brick, which had been packed under shelter; the water did not go over top of the stack, but came up to the lower part, and the brick softened and mashed, and others came down and were softened and mashed down in the same way; brick worth $5 per thousand; at that time the water was ten or twelve feet higher above the culvert than it was below.

That in May, 1887, the water was ponded back over his land; land rich, partly in clover, partly in oats, and partly in other crops; the witness testified as to the damage to the crop, but as to that it is not deemed material to set out the particulars    At this time witness had about 75,000 bricks destroyed at same place and in same manner as in 1885

Again, in October, 1887, about the time of the Fair, water ponded back again; destroyed 15,000 brick. For agriculture

for 1885 and 1886, damages $400 to $500 per year. The water was ponded back at almost every rain by the culvert. The land was well ditched. Any ordinary size rain would pond it back on the farm. It takes a larger rain than ordinary to pond it back on the brick-yard.

On the cross-examination of witness he said, there is a mill-dam below the culvert, I do not know how high, which has been there eight or ten years. The rain in May, 1887, was a big rain, but I do not know that it was extraordinary. Culvert is higher, 25 to 30 feet. No freshet in river when my brick were destroyed. In reply to question, as to why did you not make your brick-yard out of reach of the water after your bricks were destroyed the first time, witness said, "The brick-yard had cost me a great deal, and I took the risk," and afterwards said it was the only suitable place for making brick. I have omitted much of the details in regard to damages to brick, &c., not deemed material.

By consent, defendant was allowed to introduce, out of the regular order, the witness P. B. Hawkins, who testified:

"I built the culvert in 1859; I was contractor for the work; Bodwell, a civil engineer, had direction of the construction."

The defendant offered to show by witness the reputation of Bodwell as an intelligent and expert engineer.

Plaintiff objects. Objection sustained.

Exception by defendant.

Witness qualified himself as an expert, and further testified:

"I think the culvert sufficiently large for the size of the stream; I thought it sufficient to carry off any rise; largest culvert I ever built."

Upon cross-examination, witness said:

"If the jury find, as a fact, the water was ponded back ten or twelve feet higher above the culvert than below, it would not be sufficient."

T. A. Clark, a witness introduced by defendant, testified :
" That, under the authority of the War Department, he had
kept a record of rain-fall in Weldon for past 17 years; that
on the 10th day of May, 1887, 6 ₁%% inches of rain fell; fell
from 9 a. m. to midnight; this was an extraordinary fall of
rain ; no such rain has fallen since I have kept record."

The plaintiff was permitted, after objection by defendant,
to ask the witness Clark, " If ponding back or accumulating
water on the ' Model Farm,' in the spring or summer time,
tended to injure health ?"

Objection overruled. Exception by defendant.

Witness answered : " It would depend upon how long
water staid; if it became stagnant, it would."

Defendant objected to answer. Overruled. Defendant
excepts.

The plaintiff proposed to show that the culvert below was
larger. Defendant objects.

Court being of opinion that defendant had opened the
door, by the examination of the witness Hawkins, allowed
witness to testify.

Dr. O'Brien, a medical expert introduced by the defend-
ant, was asked by the plaintiff:

" If the jury believe, in time of large rain, large quanti-
ties of water are ponded back on Emery's Model Farm, on
which the vegetation is rank, what would be the effect upon
health?"

Defendant objects. Overruled. Exception by defendant.

Witness answered : " Rank vegetation would be killed by
water and exposure to sun ; in the summer time would pro-
duce malaria."

Objection to answer by defendant. Overruled. Excep-
tion by defendant.

The defendant prayed the following instructions:

" 1. If the jury shall believe that in May, 1887, a rain-fall
of over six inches fell, said fall of rain excessive and extra-

ordinary, and if the jury shall believe that damage was sustained thereby, that the defendant is not liable therefor."

Refused, except as hereinafter set out in charge. Defendant excepts.

" 2. That if the jury shall believe that the plaintiff knew, or had cause to know, at the time he placed the brick at the place he did, that it was subject to overflow, then it was contributory negligence, and they will answer the issue, Yes."

Refused, except as hereinafter set out in charge. Defendant excepts.

" 3. That if the plaintiff knew at the time he planted his crops on the Model Farm, that it was subject to overflow, then he has contributed to the damage, and the jury will find issue, Yes."

Refused, except as is hereinafter set out in the charge. Defendant excepts.

" 4. That if the defendant has used its culvert as it now is since 1857, then the law presumes it has a grant to do so, and the plaintiff cannot recover."

Refused, except as is hereinafter set out in the charge. Defendant excepts.

The defendant also asked this instruction :

" That there is no evidence that the maintenance of the culvert by the defendant in its present condition is a public nuisance," which was given by the Court.

The Court then instructed the jury as follows:

" The first issue is, has the defendant negligently ponded water back upon the plaintiff's land?

" The burden rests upon the plaintiff to satisfy you, by a preponderance of the testimony—*i. e.*, by the greater degree of credence raised in your minds. Now, what is the truth of this matter?   No question is made about the building of the railroad and the construction of the culvert, for the defendant admits so much.    The defendant says that, although it had constructed the culvert, it was built in such manner and with such care that injury to the plaintiff was

not to have been anticipated. It was the duty of the defend-
ant to have constructed its culvert so that it would carry off
the water of the stream, under all ordinary circumstances,
and the usual course of nature, even to the extent of such
heavy rains as are ordinarily expected, unless it has the
right of grant, ac ual or presumed, to make it smaller.    If
the defendant so constructed the culvert that it was not suffi-
cient to carry off the water of the stream under ordinary cir-
cumstances (and by ordinary circumstances is meant the
usual rainfall), even if such heavy rains are occasional; and
if by reason of the insufficient culvert the plaintiff's land
was overflowed, the answer to the first issue should be ' Yes,'    ￮
unless the defendant had acquired the right to pond water
on the plaintiff's land.    As to whether the defendant had
such right, I will instruct you when I come to speak of the
fourth issue.

    "On the other hand, if the jury shall believe that the
plaintiff's land was flooded from the creek and not by back
water from the culvert, then it was done by the negligence of
the defendant, and the issue should be answered ' No.'   And
if the jury shall believe that the mill-dam below the culvert
obstructed the full flow of the water, so that it did not flow
freely through the culvert, as it would have otherwise done,
and that if it had not been for the mill-dam the water would
not have ponded back on the plaintiff's land, then your
answer should be ' No,' for the defendant is not responsible
for the overflow caused by the mill-dam.    It can be only
responsible for its own act, not for the acts of others.

    "If the jury shall believe that the culvert is sufficient to
carry off all the water having a natural outlet by the creek,
except in·cases of extraordinary and unusual rainfall, then
defendant was not negligent, and if the overflow was the
result of extraordinary rainfall, the answer should be ' No.'
But whether there was overflow of plaintiff's land, whether
such overflow was caused by heavy rains, such as are not
unusual, and the obstructed flow of the water by the culvert,

or whether the culvert was sufficient to carry off the water under ordinary circumstances, or whether the overflow was all the result of extraordinary rain-fall, are questions for you to say. .

" Perhaps it may be proper for me to say that if you find the first issue 'No,' that is an end of the case. But if you should answer ' Yes,' then it becomes material to consider and determine other issues.

" I shall next call your attention to the fourth issue. (N. B.—This issue was afterwards divided, and constitutes the fourth and fifth issues as found in the record.)

" The fourth issue is compound. The first question presented is as to how long the defendant has been using the culvert in its present condition. This is merely a question of fact, upon which I can give you very little assistance. You must determine it upon the evidence.

" The second part of the issue is, 'and had the user given the defendant an easement on the land of the plaintiff?'

" It is insisted by the defendant that, having used the culvert for more than twenty years before the plaintiff began his action, that it has acquired a right, not only to use it for its own purposes, but to use it, although it may have the effect of ponding back water on the land of the plaintiff. It is true that a right to pond water upon the land of another may be acquired by actually ponding it back and keeping it so ponded back for twenty years. It is not necessary that it should be kept continually ponded to the same height, when the difference is made by low water in time of drought or for repairs; as in case of a mill-pond, if a dam is erected and kept up, and the water is ponded back for twenty years, the owner of the mill acquires an easement to pond the water back over the land covered by the mill-pond, when as full as usual, although it may have been taken down for repairs, and although it may occur that, by reason of drought or by reason of defects in the dam itself, temporarily the

water may have been part of the time lower.  The defendant assumes the burden of proof, when it undertakes to show its right to pond water back on the land of plaintiff, and it must show it by a preponderance of evidence."

Exception by defendant.

" If the jury is satisfied that the defendant has for twenty years ponded water back on the land of plaintiff in such a way as to expose itself to action for such ponding for twenty years before this suit was begun, then the defendant has acquired a right to pond the water back on the plaintiff's land."

Exception by defendant.

" In determining this question of easement and fixing the time of the twenty years, the jury must count out the time from 20th May, 1861, to the 1st January, 1870.

" In fixing the beginning, the jury must find the time that defendant's claim began—the time its right was first asserted by an actual ponding back upon the lands now claimed by the plaintiff.

"It makes no difference whether the land was then owned by the plaintiff, or by those under whom she claims.

"[In order to acquire a right by prescription, the user must have been continuously asserted and enjoyed without interruption for twenty years; and if the ponding back of water on the land of plaintiff was at long intervals, such occasional trespasses could not ripen into title.] "

Defendant excepts to portion of charge in brackets.

On the subject of contributory negligence, his Honor instructed the jury that if the circumstances were such that a man of ordinary prudence would have planted his crops and put his bricks on the land, then the plaintiff was not negligent.  If the defendant had a right by prescription to pond back the water (if it did pond it back), then the plaintiff would be guilty of negligence in placing his bricks or planting his crops on the land, and the jury should answer

the third issue " Yes." But if defendant had no right to pond back the water (if it did pond it back), and a man of ordinary prudence would have so planted his crops and placed his bricks, then the plaintiff was not guilty of negligence in so planting his crops and placing his bricks on the land. Defendant excepted.

His Honor also further charged the jury, that the measure of damages was the actual injury sustained by plaintiff's crops and brick.

Verdict for plaintiff, as before stated.

Defendant moved for a new trial:

" 1. For admission of improper testimony.

" 2. For failure to instruct as requested.

" 3. For error alleged in charge given."

Then defendant moved for judgment upon the verdict. Motion overruled.

This cause coming on to be heard, and having been tried by the jury upon the following issues:

" 1. Has the defendant negligently ponded water back upon the plaintiff's land?

" 2. If so, what damage has plaintiff sustained thereby?

" 3. Have the plaintiffs been guilty of contributory negligence?

" 4. How long has defendant been using the culvert in its present condition?

" 5. And has the user given the defendant an easement in the lands of the plaintiff?"

And the jury having answered the first issue " Yes;" the second issue, " $1,870;" the third issue, " No;" the fourth issue, " Since it was built, with the exception of the cracks, August, 1857," and the fifth issue, " No":

" It is now, on motion of R. O. Burton, Jr., plaintiff's attorney, adjudged that the plaintiff recover of the defendant the sum of one thousand eight hundred and seventy dol-

lars, with interest from the first day of this term till paid, and the costs of this action, to be taxed by the Clerk."

From this judgment the defendant appeals to the Supreme Court.

*Mr. R. O. Burton*, for the plaintiff.
*Mr. W. H. Day*, for the defendant.

AVERY, J. (after stating the facts). The action was brought to recover damage for injury done to plaintiff's brick-yard in the year 1885, and again in May, 1887, and to his crops, by overflows caused by the defective construction of a culvert over a creek on the defendant's line.

The first and second exceptions present the question, whether his Honor erred in refusing to submit two additional issues tendered by defendant's counsel. It was not the design in adopting the new procedure, that parties should be bound by rules so technical as those which governed the old system of pleading. The forms of action being disregarded, and it being requisite only, under *The Code*, to allege the material facts in the complaint, and to admit or deny the allegations in the answer, ordinarily it must be left to the sound discretion of the *nisi prius* Judge to determine, when required or allowed to settle the issues, whether the action can be tried more intelligently and satisfactorily by the jury upon specific issues, submitted for the purpose of eliciting distinct findings in the nature of a special verdict, or by confining the inquiry, in imitation of the old method, to a single issue, or a small number of issues, and pointing out, by instruction, how the conflicting evidence, controverted in the pleadings and on trial, though not involved in the terms of the issues submitted, bears upon the verdict to be rendered in response to them, provided, always, that the issues submitted are raised by the pleadings.

It is misleading to embody in one issue two propositions, as to which the jury might give different responses, and on exception taken in apt time, a new trial will in such cases be granted. The facts found by a jury, whether comprehended under one or many issues, must be sufficient to enable the Court to proceed to judgment. When the judgment can be predicated upon the findings, though it may appear that the Judge who tried the case below refused to submit more specific issues tendered by a party, yet, if he told the jury how the testimony relating to the issues refused should be considered in connection with the law, in passing upon those submitted, and thereby gave opportunity to enter exception to the instruction given, and to the refusal to give that asked, the appellate Court will not grant a new trial. The Court will impose no limit to the exercise of discretion on the part of the Judge below, in settling the issues, except that the facts established by the responses to them shall constitute a lawful basis for the judgment, and that an appellant was not denied an opportunity to have the law applicable to any material portion of the testimony fairly presented and passed upon by the jury, through the medium of some issue.

The defendant contends that there was error in declining to submit to the jury the two issues offered :

" 1. What was the depth of rain-fall on 10th of May, 1887 ? Was the rain-fall 10th of May excessive and extraordinary ?

" 2. What damage did plaintiff sustain by ponding back of the water on that occasion ?"

His Honor presented the whole question of negligence on the part of the defendant in the first of the five issues, to which the jury responded, and which is in the following language :

" Has the defendant negligently ponded water back upon the plaintiff's land ?"

102—15

The Judge instructed the jury upon the question of negligence on defendant's part as follows:

" It was the duty of defendant to have constructed its culvert so it would carry off the water of the stream under all ordinary circumstances and the usual course of nature, even to the extent of such heavy rains as are ordinarily expected, unless it has the right of grant, actual or presumed, to make it smaller.  If the defendant so constructed the culvert that it was not sufficient to carry off the water of the stream under ordinary circumstances (and by ordinary circumstances is meant the usual rain-fall), even if such heavy rains are occasional, and by reason of insufficient culvert the plaintiff's land was overflowed, the answer to the first issue should be ' Yes,' unless the defendant had acquired the right to pond water on the plaintiff's land."

We think his Honor stated the law correctly, and is sustained by the case of *Wright* v. *Wilmington,* 92 N. C., 156, and the authorities there cited; also Wood on Railways, vol. 2, sec. 253, p. 873.

By applying the law, as stated by the Court, the jury would naturally determine from the testimony whether the rain-fall of the 10th of May, 1887, or that in the year 1885, was so extraordinary and excessive that it could not have been reasonably expected to fall, and if such was the character of the rain at either date, they would naturally leave out any injury sustained by such a rain-fall, in making their estimate of the damage ; or if they found that all the damage sustained by the plaintiff, both in his brick-yard and as to his crops, was attributable to extraordinary rains, they would of course respond " No " to the issue.  His Honor, in addition to the language quoted from his charge, told the jury that the defendant was " not negligent, if the overflow was the result of extraordinary and unusual rain-fall." The defendant introduced a witness, P. B. Hawkins, who testi-

fied that he built the culvert in 1859, was contractor for the work, and that one Bodwell, a civil engineer, had direction of the construction.

The defendant offered to show by the witness Hawkins " the reputation of Bodwell as an intelligent and expert engineer." On objection by the plaintiff, the testimony was held to be incompetent, and the defendant excepted. Counsel on the argument in this Court did not abandon this exception, but failed to cite any authority in support of it; and we cannot see how the fact that the engineer, who had the oversight of the construction of the culvert, was an intelligent and expert engineer, tends to show that the culvert was in fact so constructed as to carry off any but an excessive fall of rain.

The plaintiff had, before the introduction of the witness P. B. Hawkins, " offered to prove, as tending to show negligence, that, some two hundred yards below, on the same stream, the Roanoke Navigation Company had constructed a culvert before defendant, which was twenty-six feet wide," but upon objection by defendant the testimony was then excluded. The witness Hawkins, having qualified himself to speak as an expert, said : " I think the culvert a sufficiently large culvert for the size of the stream. I thought it sufficient to carry off any rise. It was the largest culvert I ever built." Subsequently the Court, being of opinion that the defendant, by the examination of Hawkins, had " opened the door " and made the evidence previously excluded competent, allowed a witness to testify, after objection on the part of the defendant, that the culvert built by the Roanoke Navigation Company, two hundred yards below, on the same stream, was larger than that built by Hawkins, and this is the ground of another exception relied on by the defendant. We concur with his Honor in his ruling. Hawkins had qualified as an expert, as we may fairly infer from the record, in part, at least, showing his experience

as a contractor for work on railways, and at any rate he had been allowed, after stating that he had built that particular culvert, to testify further that it was the largest he had ever built, the natural inference being that he had constructed a number, and this was of unusual capacity. In order to break the force of this testimony, it was competent for the plaintiff to show that another had been built so near below that the volume of water in the stream would not probably be materially increased before reaching it, or certainly to show that another and larger one was very near, and in that way to meet the argument (which defendant's counsel might make to the jury) that an expert and experienced engineer had never constructed one that would allow so much water to pass. Hawkins might have been asked, on cross-examination, with a view to impeach him or destroy the weight of his testimony as an expert, what the dimensions of the lower culvert were. Greenleaf on Ev., vol. 1, sec. 468. But we think that the testimony of Hawkins tended to show that the defendant had not done the work in a negligent or unskillful manner, by impressing the jury with the idea that no larger culvert had ever been constructed, because an educated and intelligent contractor had not, in the years of experience that made him an expert, built one so large. This is only a fair inference from the testimony, and it would follow that testimony as to the location and capacity of the lower culvert must of necessity tend to remove the incorrect impression made by Hawkins' testimony, and in that way bear directly upon the question of negligence, involved in the first issue.

The testimony, offered to prove that the stagnant water engendered malaria and caused sickness, was withdrawn from the jury, and the exception growing out of its introduction was not insisted on in this Court.

Counsel for the defendant contends, that there was error in the refusal to give the instruction prayed for in reference to contributory negligence, and in giving that substituted

by his Honor for it. Indeed, in the argument in this Court counsel went further, and cited a number of authorities to establish the position, that this is a case in which, upon the undisputed facts, the jury should have been told there was contributory negligence on the part of the plaintiff.

The plaintiff, T. L. Emery, testified, that in the fall of 1885 his brick-yard was overflowed, and in May, 1887, it was again submerged, and that the plaintiff suffered great damage, on both occasions, in the destruction of brick.

In reply to a question, he stated, as a reason why he again made brick at the same place, after the overflow in 1885, that the preparation of the brick-yard had cost him a good deal of money, and that the place selected was the only place suitable for making brick on the land.

It is insisted, that there was a want of ordinary care, shown by plaintiff, in manufacturing brick a second time in a place that had been overflowed nearly two years before.

If the jury had not found that there was negligence on the part of the defendant in response to the first issue, then, under the instruction of his Honor, it would have been unnecessary to proceed to consider the third, which involved the question of contributory negligence. So, we may assume that the jury agreed upon the affirmative answer to the first issue, before discussing the third.

We cannot, upon reason or authority, reach the conclusion that the plaintiff exhibited a want of ordinary care by manufacturing brick in the year 1887, because the brick-yard had been damaged in 1885, nor that he was negligent in planting another crop in the latter year on land that had been overflowed two years before, for the reason that the defendant company, by the careless and unskillful construction of its road, in the failure to provide adequately for the escape of the water of the creek, even when there was no extraordinay volume, had subjected the plaintiff to some risk in raising the usual crops on the farm, or attempting to

utilize the only suitable place for manufacturing brick on that tract of land. It is often difficult to determine when the admitted evidence in a case crosses the shadowy line, and compels the Court to take the case from the jury, and declare, as the law, that contributory negligence has been proven. The application of the rule, that when the facts are ascertained, the question, whether there has been negligence or contributory negligence, is one addressed exclusively to the Court, is attended with difficulty, because it seldom happens that the material facts in any two cases are precisely the same. When there is any conflict in the testimony the Courts will lay down the rules of law and define the standard of care necessary, but leave the jury to decide, whether, under the circumstances, ordinary care was exercised by a defendant.

The defendant has no reason to complain that the Court allowed the jury to apply, as the test, the abstract principle that the plaintiffs were bound to exercise that degree, and only that degree, of care which a man of ordinary prudence would exhibit in the management of his affairs, and refuse to sustain the unreasonable proposition that a prudent man must either allow his land to remain uncultivated, and his brick-yard, with his investment for manufacturing, to be abandoned, or incur the risk of losing the fruits of his labor, because he had some reason to fear that, by the negligent construction of a culvert, the crop or the brick might be injured or destroyed. Wood on Railway Law, sec. 300, and notes.

The authorities cited by defendant do not sustain the position, either that the Court erred in refusing to give the instruction asked, or in the failure to go further in that given, and tell the jury that the admitted facts were sufficient proof of contributory negligence. The authority to which counsel refers us is not applicable to the facts of this case. Beach on Contributory Negligence, secs. 12 and 13.

The same author says, section 162: " It is for the Court to say, in a majority of instances, what is and what is not negligence, *as an abstract proposition.* When, therefore, *the facts* of a *given case* are *undisputed*, and the *inferences* or *conclusions* to be *drawn from* the *facts* indisputable—when the standard of duty is fixed and defined, so that a failure to attain it is negligence beyond a cavil, then contributory negligence is matter of law. When the *facts* are *unchallenged*, and are such that *reasonable minds* could *draw no other inference* or *conclusion from them* than that the *plaintiff was* or *was not* at fault, it is the province of the Court to determine the question of contributory negligence as one of law." He cites Field on Damages, p. 519, to the effect that, " to justify a nonsuit on the ground of contributory negligence, the evidence against the plaintiff should be so clear as to leave no room for doubt, and all material facts must be conceded, or established beyond controversy." The learned author concludes that, " in a majority of cases, the question of the plaintiff's negligence will be one of fact, to be ultimately determined by a jury."

In *Detroit R. R. Co.* v. *Von Steinborg* (cited by the author), Judge Cooley says: "The case must be a very clear one, which would justify the Court in taking upon itself this responsibility." * * * Speaking of the finding by the Court that there was contributory negligence in any given case, the learned Judge says further: " He thus makes his own opinion of what would be generally regarded as prudence a definite rule of law. It is quite possible that if the same question of prudence were submitted to a jury, collected from the different occupations of society, and, perhaps, better competent to judge of the common opinion, he might find them differing with him as to the ordinary standard of proper care."

The last exception grows out of the refusal to give the instruction asked, that " if the defendant has used its culvert, as it now is, since 1859, then the law presumes it has a

grant to do so, and the plaintiff cannot recover." The injury resulting from the unskillful construction of culverts cannot be estimated as a part of the damage for right of way, and the grant from the land-owner or the proceeding for condemnation, to which he and the corporation were parties, would not operate as an estoppel in an action brought by him for injury caused by the unskillful construction of culverts and consequent damage to land located beyond the right of way. The owner of adjacent land can, of course, resort to common law remedy for damage sustained by him in the overflow of his land, directly consequent upon such carelessness on the part of a railroad company in the construction. Wood on Railway Law, sec. 253, vol. 2, p. 876. His recovery can be defeated only by proof of a prescriptive right, acquired by user, to maintain the culvert in its present state, with the consequent injury. The right by prescription could be acquired by the defendant by user for twenty years, and the user, in order to raise the presumption of a grant from the quiet enjoyment of the easement, must have been such as to have subjected the claimant to an action any time for twenty years before his right to the easement was controverted by the bringing of this action. The defendant must show, too, in order to establish his right to the easement, " that the user, at the time when the action was brought, was not substantially in excess of that which he had exercised during the period requisite to the right." *Sherlock* v. *Railway Co., supra* To apply that rule to this case, the burden is on the defendant to show, not that the overflow has constantly extended over a fixed territory on the plaintiff's land or varied only with the water-mark for twenty years, but that at *regular* or *irregular* intervals the water has overflowed the very land on which the bricks were destroyed or the crops injured, and to the very same extent, so as to have made the defendant liable in an action for or in the nature of trespass, by the *feme* plaintiff and those under whom she claims, at any time during that period.

The floods occurring at intervals must have always covered the land on which the crops were raised, or the bricks were made, in order to establish an easement, that would prove available as a defence to the one ground of action or the other.   Wood on Lim. of Actions, § 182, p. 377; *Sherlock* v *Railway Co.* (and Reports); Northwestern Reporter, vol. 17, No. 2, p. 171.

The defendant has not attempted to establish the prescriptive right, by offering any testimony to show that the land has been overflowed.   So far as we can judge from the report of the evidence, which does not purport to be full, there was no proof offered as to the nature or extent of the overflow, except that offered by plaintiff in support of his demand for damage, and covering only three years prior to the bringing of the action.   The proof by the plaintiff, that ordinary rains, for four years prior to the bringing of the action, had been sufficient to cause the overflow of the brickyard and the cultivated land of the *feme* plaintiff, does not supply the omission of the defendant company, or relieve it of the burden.   It does not follow that the overflow has been uniform so as to subject the company to an action in favor of those under whom she claims, for the previous time, extending back twenty years; for changes in the system of drainage by land-owners above, and the clearing of lands, might have increased the volume of water in the creek and caused it to overflow more readily.   But such alterations would not have relieved the defendant company of liability resulting directly from the insufficiency of its culverts to discharge the water.   No such testimony having been offered by the defendant, the complaint, that his Honor left the jury to pass upon the question whether an easement had been acquired, ought not to come from it.

We conclude, therefore, that there was no error, and the judgment must be affirmed.

No error. ·                                    Affirmed.