## Louisville Gas Company v. Guelat, et al.

(Decided November 15, 1912.)

### Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Gas—Company Not Insurer of Pipes—Ordinary Care.—A gas company is not an insurer of its pipes, and is only required to use such care as a person of ordinary prudence handling a like agency would ordinarily use.

2. Gas—Exercise of Ordinary Care—Question for Jury.—Where the pany is not an insurer of pipes, and is only required to use ply plugged up the pipe at the end without cutting off the gas, it was a question for the jury whether or not in the exercise of ordinary care, it should have inspected the pipe in eight months, the pipe being practically a part of its system of mains.

3. Drunkenness—Evidence—Competency.—Proof that a person was drunk two or three hours after an accident, is competent as a circumstance tending to show that he was drunk at the time.

HUMPHREY & HUMPHREY and E. LELAND TAYLOR for appellant.

EDWARDS, OGDEN & PEAK for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

In August, 1910, appellees bought a house and lot on Stratton avenue, in the city of Louisville, from a Mrs. Bevars. She moved out and they moved in. She had been using a gas stove which she took away with her. The stove was disconnected from the pipe; the meter was taken out and a cap was placed on the pipe. Appellees had never used gas and did not subscribe for the

gas service. They lived in the house until the following April, when they bought a second hand gas stove and employed a man named Johnson to put it in. Johnson asked for a candle, saying that it was dark in the corner where the pipe was. He lit the candle and stooped down near the pipe. The gas exploded and set fire to the house burning it up with its contents. This suit was brought by appellees against the gas company to recover for the loss of the contents of the house on the ground that the fire was caused by its negligence. On several occasions during the winter the odor of gas in the house was detected, but they supposed it was from the sewer, and there was not enough of it to cause any great inconvenience. The pipe was sticking up through the kitchen floor eight or ten inches and Johnson says that when he touched the plug it popped out and immediately the gas took fire, but that he did not unscrew the plug. The plug or cap was a piece of metal with screw threads on it, and was or should have been screwed on the pipe which had similar threads on it. According to the proof for the gas company the threads on the pipe after the fire were in good order. According to this evidence also Johnson admitted on the day of the fire that he had unscrewed the plug, and that the fire resulted from his opening the pipe. There was also some proof tending to show that he was drunk at the time. On this proof the circuit court gave the jury the following instruction:

"1. It was the duty of the defendant, Louisville Gas Company, to have and maintain its gas pipe in such condition as to prevent the escape of gas into the plaintiff's house, and if you believe from the evidence in this case that the gas company negligently failed to so cover or protect the place where the gas was intended to come into the house, as to prevent it from escaping in the house, and by reason of such negligence on the part of the gas company if any, its agents or employes, the gas was permitted to get into the house, and thereby caused the ignition of the gas and the burning of the house, then the law of the case is for the plaintiffs and you should so find."

The jury found for the plaintiffs in the sum of $547, and the gas company appeals from the judgment entered on the verdict.

By the instruction of the court the jury were in substance told that it was the duty of the gas company to

have and maintain its gas pipe in such condition as to prevent the escape of gas into the plaintiff's house, and that a failure on its part to do this was negligence. The instruction goes too far. In Triple-State Gas Co. v. Wellman, 114 Ky., 79, we said:

"The authorities lay down the rule, as gas is a useful article, almost indispensable in modern life under many circumstances, the manufacture and sale of it is not an illegal act; and that the company in supplying this necessity to its customers is bound only to exercise such care and skill in its management as the dangerous character of the substance and the attending circumstances demand of a person or ordinary prudence."

The company is not an insurer of its pipes and it is not liable if it fails to keep its gas pipes in such condition as to prevent the escape of gas, where it has used ordinary care to this end. To illustrate in this case, it may be true that the gas company properly put the plug in the pipe and that the pipe was in a safe condition as it left it, and it may be true that after this in some manner the plug was disturbed or the pipe was injured without its knowledge, and when it had no reason to anticipate that there was any danger. The court should have told the jury in effect that it was the duty of the gas company to use ordinary care to have and maintain its gas pipe in such condition as to prevent the escape of gas into the plaintiff's house; and if it failed to use such care and by reason of such failure, the loss occurred, they should find for the plaintiffs. By another instruction the care required of the gas company should be defined as in the Wellman case.

In Brady v. Gas Co., 85 Md., 637, the court said:

"It was not negligence on the part of the company to leave its pipes on the premises, nor does the fact that it made no examination of the pipes raise any presumption of negligence in the absence of any notice of the existence of any cause for an examination. Had there been such notice, their duty would have been to have discovered the cause of the leak and to have used the proper means to remedy it. It was not required to keep up a constant inspection along its lines without reference to the existence or non-existence of a probable cause for the occurrence of leaks or escape of gas."

To same effect see Mowers v. Gas Co., 142 App. Div. (N. Y.), 169; Torrens v. Gas Co., 88 Ark., 510.

But in those cases the property owner was a customer of the gas company and was using the pipes. Only a short time had elapsed. Here the gas company alone was using the pipe, and it was practically a part of its system of mains and pipes. The authorities are uniform in holding that it is incumbent on it to use ordinary care in inspecting its mains, and that the failure to inspect at reasonable intervals is evidence of negligence. Here there had been no inspection from August to April, and it was a question for the jury whether ordinary care had been used. (See 14 Am. & Eng. Encyc., 937; 2 Lawson's Rights and Remedies, section 577; 20 Cyc., 1172-74, and cases cited.)

There is nothing in the case to show that the gas company if the plug was properly put in, should have anticipated trouble from this pipe, or that any notice of the escape of gas into the house or of any trouble there was given it. No facts are shown from which it may be inferred that it was negligent in not anticipating trouble from the gas there, unless it may be inferred from the lapse of time that it should have inspected the pipe. It was necessary that a meter should be put on before the stove was connected, and no application had been made to it for a meter. Johnson apparently did not know that the meter had been taken out. Under the evidence the court should have instructed the jury that if the gas company used ordinary care to plug up the pipe in a safe condition to prevent the escape of gas, it was not responsible to appellees, unless in the exercise of ordinary care, it should have inspected the pipe in the meantime and remedied the trouble, if any.

The court did not err in refusing to instruct the jury peremptorily to find for the defendant; for the escape of gas under the circumstances detailed by the proof for the appellees, made out a *prima facie* case of negligence on the part of the company. (Smith v. Boston Gas Co., 129 Mass., 318.)

The court erred in excluding from the jury the evidence offered by the defendant to the effect that Johnson was drunk two or three hours after the explosion occurred; for this was a circumstance from which it might be inferred that he was drunk when he brought about the explosion. The court also erred in refusing to require Johnson to answer the questions asked him as to the drinking he had done that day. Whether he was drunk

or sober at the time was an important question in the case and his answers to these questions might have thrown no little light on the matter.

Judgment reversed and cause remanded for a new trial.