**OKMULGEE GAS CO. v. KELLY et al.**

No. 13499—Opinion Filed Sept. 30, 1924.

Rehearing Denied Dec. 30, 1924.

**1. Death — Action for Wrongful Death—Negligence—Causal Connection.**

In order for the plaintiff to make out his right of recovery for wrongful death, he must show a causal connection between the injury suffered and the negligence charged, and that the negligence was the wrong of the defendant.

**2. Same—Necessary Parties Plaintiff.**

In an action for wrongful death, in the absence of a surviving widow, or the appointment of a personal representative, the action must be brought by the next of kin. All persons of the next of kin are necessary parties.

**3. Same—Measure of Damages.**

The measure of damages for the wrongful death of another is the pecuniary loss suffered by the plaintiff, and includes anything of a monetary value to the plaintiff.

**4. Same—Failure to Plead or Prove Pecuniary Loss—Dismissal or Instructed Verdict.**

In an action by the next of kin for wrongful death, if the petition fails to show a pecuniary loss suffered by any one of the plaintiffs, the court should sustain a motion by the defendant to dismiss the particular plaintiff from the action, or if the evidence fails to show that any plaintiff has suffered a legal loss, the court should sustain a motion for an instructed verdict against the particular plaintiff.

**5. Same—Survival of Cause of Action for Benefit of Estate.**

This rule does not apply in an action for an injury to the person, suffered in his lifetime. Such an action survives for the benefit of the estate, and any proceeds from the judgment are distributed to the next of kin, as other property of the estate.

**6. Gas — Landlord and Tenant—Inspection of Consumer's Pipes—Duty of Gas Company and Landlord.**

Where a company in furnishing gas for domestic purposes lays its line, reasonably suited for the purpose, to the property line of the consumer, and the latter installs a pipe line to his residence, and equips the same for burning gas, no duty rests upon the gas company to inspect the pipe line and connections of the consumer, unless it has actual notice of defects. In relation to his tenant and persons rightfully on his property, the consumer owes the duty to inspect and maintain such pipe line and fixtures in his possession and under his control.

**7. Same.**

The gas company has the right, in the absence of actual notice, to rely upon the belief that the consumer will maintain the pipes and fixtures on his premises and under his control, in a reasonably safe condition to receive and use gas. Dependent upon this belief, the gas company is required to use care commensurate with the nature of the service, to cause the gas to pass through its pipe lines and the lines and connections of the consumer for the use of the latter.

**8. Insufficiency of Evidence.**

Record examined; held, that the evidence is insufficient to support the judgment in favor of the plaintiffs.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, of Okmulgee County; Mark L. Bozarth, Judge.

Action by C. W. Kelly, H. D. Baily, Winnie Meloan, and Mrs. Joe LeValley against the Okmulgee Gas Company, for wrongful death. Judgment for plaintiffs. Defendant brings error. Reversed and remanded.

M. A. Breckenridge, Chas. K. Bostick, and Lee Daniel, for plaintiffs in error.

R. E. Simpson and Hummer & Foster, for defendants in error.

Opinion by STEPHENSON, C. C. W. Kelly and Margaret Z. Kelly, his wife, on December 20, 1919, were residing in the home of L. G. Agard in the city of Okmulgee, as the tenants of the latter. About 7 o'clock, in the morning of December 20th, an explosion from gas occurred in the part of the house occupied by and under control of Agard, which wrecked and destroyed the house. Mrs. Kelly received injuries from which it is alleged she died on February 12, 1920. The deceased left surviving, her husband and a brother and two sisters, adults, as her next of kin. These parties, as the next of kin, commenced their action against the Okmulgee Gas Company, for the wrongful death of Mrs. Kelly. The petition does not allege that the brother and sisters were dependent upon the deceased for support. In the trial of the cause judgment went for the plaintiffs, and the defendant has appealed the cause to this court. Among the several proceedings had in the trial court and assigned as error here for reversal are: (1) Improper parties plaintiff; (2) error of the court in failing to sustain defendant's demurrer to the evidence of the plaintiffs; (3) the verdict of the jury is contrary to the evidence; (4) the verdict is contrary to law; and (5) error in giving certain instructions to the jury.

The Kellys occupied two front rooms, one of which was used as a bedroom and the other as a kitchen. There was a gas stove in the bedroom, and a gas range in the kitchen. The bedroom occupied by Agard was separated from the kitchen room by a board wall. There was a gas range in Agard's bedroom, and situated about four or five feet from the gas range in the kitchen of the Kellys. For cause of action, the plaintiffs alleged that at the time of and prior to the accident, Agard had in use a rubber hose connection to his gas stove, but it is **not** alleged that the defendant had notice of the use of the hose. It is alleged that the defendant caused an excessive and fluctuating pressure in the gas line serving the residence, which caused the rubber hose to loosen from its connections and permit gas to escape and fill Agard's room. On the morning in question, and without knowledge of the presence of gas, Agard arose and in attempting to light his gas range, ignited the gas in the room, which resulted in an explosion, wrecking the house and injuring Mrs. Kelly.

The evidence shows that the gas company received the gas from the fields into the city through a six inch steel pipe, at a pressure of 75 pounds. The gas passed from the main through low pressure reducers into a two-inch service iron pipe, at a pressure of 12 ounces. The service lines were laid in the streets along by the residences for connection with the buildings by one-inch iron pipe. The gas company laid the one-inch iron pipe from the service line to a point just inside the curbing, to the property line of the consumer. The consumer made a connection by one-inch iron pipe with the gas company's line at the curbing, and extended the line into his residence, and there made the connection for use of the gas. The following ordinance was and had been in effect in the city of Okmulgee for some time prior to the accident:

"Rubber hose prohibited. It shall be unlawful for any person, firm or corporation, or gas fitter to connect any gas stove or heater for any purpose, with a rubber hose, or any other flexible connection. All connections must be iron pipe."

As relating to the accident, Kelly testified that he got up about 6 o'clock a. m. and first lighted the gas range in the bedroom. He went back to bed and soon heard the noise of the gas burning. The blaze of the stove was then burning several inches in height. He turned the burner down and continued to regulate the stove for some few minutes. He then passed through a door into the kitchen, where he lighted the gas range used for cooking. He had a similar experience with the range. Mrs. Kelly soon came into the kitchen and commenced the preparation of breakfast. Kelly gave his principal attention to the regulation of the burning of the fire in the kitchen range. Several of the neighbors living in that vicinity testified to similar experience with their stoves on the morning of the accident. Mrs. Blalock, whose residence was situated about 20 feet from the Agard home, testified that the gas range had burned in the living room of her home all night. That shortly after six o'clock the noise of the burning range attracted her attention and she went into the room and lowered the burner. She returned to bed and was probably asleep at the time of the accident so she testified. It was the purpose of the plaintiffs by this testimony to show that the defendant was using excessive pressure in supplying gas through its service lines. The plaintiff did not offer any testimony to show what effect, if any, the pressure had on the rubber hose connection, or other gas connections in the room occupied by Agard. From the evidence, apparently, iron pipe connections were used to connect the gas stoves in the homes testified about. No explosion from gas occurred in the vicinity of the Agard home, or in any other part of the city on the morning in question.

Plaintiff, Kelly, testified that just before the explosion he heard a roaring noise, which he took to be the gas range burning in Agard's room. Agard testified for the plaintiff, by deposition, that he had equipped his gas range with a rubber hose, and that the hose was in use at the time of the accident. He testified that on the morning of the accident he got up, and while standing about four feet from the gas range, he struck a match to light the stove, which resulted in the explosion. No testimony was offered by Agard or by any other person for the plaintiffs, to show the condition of the rubber hose or other connections at the time the explosion occurred. There was no testimony offered to show that the gas pressure was sufficient to, or did impair the connections or fittings to gas stoves in any of the homes in the vicinity of the Agard home.

The defendant offered evidence to show that it was customary to set the low pressure reducers at 12 ounces at five o'clock, in the winter time, and that the reducers had been set at that hour accordingly, on the morning of the explosion.

We have rather tediously detailed the evidence in order to show clearly the duties owing by the defendant to the plaintiffs, and the breach of such duties, if any, and the relationship between and among the parties.

Where the landlord retains control of a portion of the premises occupied by the tenant, the responsibility rests with the landlord to maintain such portion of the premises occupied by him in a reasonably safe condition, so that injury will not result to the tenant. Hinthorn v. Benfer, 90 Kan. 731, 136 Pac. 247, L. R. A. 1915-B, page 98; Grells v. Lewis Wharf Co., 211 Mass. 54, 97 N. E. 745, Ann. Cas. 1913, A, page 1136; McGinley v. Alliance Trust Co., 168 Mo. 257, 66 S. W. 153, 56 L. R. A. 334; Bender v. Weber, 250 Mo. 551, 157 S. W. 570, 46 L. R. A. (N. S.) 121; Howard v. Washington Water Power Co. (Wash.) 134 Pac. 927, 52 L. R. A. (N. S.) 578.

The gas company owes the duty to see that the pipe lines and fittings, when first laid in the ground, with reasonable care and skill, will not permit the escape of gas, and a system of inspection is required as will result in reasonable promptness in the discovery of leaks, which may occur from deterioration of the material or from other causes within contemplation by the company. Pine Bluff Water Co. v. Schneider, 62 Ark. 109, 34 S. W. 547, 33 L. R. A. 366; Louisville Gas Co. v. Guelat, 150 Ky. 583, 150 S. W. 656, 42 L. R. A. (N. S.) 703; Barrickman v. Marion Oil Co.. 45 W. Va. 634, 32 S. E. 327, 44 L. R. A. 92. But in this case the duty rested with the defendant only to maintain inspection and make repairs over its line, which ended at the property line of the consumer. The defendant owed no duty to inspect the pipe line and gas fittings of Agard. The defendant would not be liable for injury resulting from explosions due to defects of pipe line, gas connections, and fittings on the property of Agard, unless it had actual notice of such defects. See notes to 32 L. R. A. (N. S.) 813, L. R. A. 1915-E, page 1023; Ann. Cases, 1924-C, at page 348. If the gas pipes and fittings are the property of the consumer, and there is no contractual

duty resting on the gas company to inspect, the consumer, by application for gas service, assumes the burden of inspecting and maintaining the pipe and fittings on his property in a manner reasonably suited to meet the required service, and the company has the right to assume that these duties have been performed by the applicant. Smith v. Pawtucket Gas Co., 24 R. I. 292, 52 Atl. 1078, 96 A. S. R. 713. However, the company would be responsible for inspection and the condition of the meter and its connections which it installed on the premises of the consumer.

If the landlord fails to properly maintain the gas connections in the property which he occupies, which results in injury to the tenant, he would be liable. Chiles v. Ft. Smith Commission Co. (Ark.) 216 S. W. 11, 8 A. L. R. 493. The defendant had the right to rely on the belief that Agard would discharge his duty in properly maintaining the gas fittings and connections in the property he occupied, unless the company had actual notice of the existing defects. Judson v. Giant Powder Co., 107 Cal. 549, 40 Pac. 1020, 48 A. S. R. 146, 29 L. R. A. 718; Emery v. Raleigh R. Co., 102 N. C. 209, 9 S. E. 139, 11 A. S. R. 727; Downey v. Gemini Min. Co,. 24 Utah, 431, 68 Pac. 414, 91 A. S. R. 798. The defendant was not called upon to anticipate any negligence on the part of Agard in this respect. Fraler v. Sears Union Water Co., 12 Cal. 555, 73 Am. Dec. 562; Hasie v. Alabama R. Co., 78 Miss. 413, 28 South. 941, 84 A. S. R. 632; Emery v, Raleigh R. Co., supra. It was the duty of the defendant to furnish Agard with gas through its lines and those of the latter by a pressure reasonably safe for the class of fittings and connections ordinarily used in connecting a stove for the use of gas. All of the duties which the defendant owed to Agard, it likewise owed through Agard to the latter's tenant. All of the duties owing by the defendant to Agard were created by the express contract, and the law forming a part of the contract, to furnish gas to Agard. It is both law and logic that a stranger to the contract, by coming on to the premises to partake of the fruits of the contract, cannot claim greater benefits through the contract than the parties to the same can assert. A third party to the contract by voluntarily taking the benefits of the contract, consequently assumes its burdens. If Agard had sued the defendant the burden would have been on the former to show that he had performed all the legal duties required of him in maintaining the connections and fittings in a reasonably safe condition, which he installed on his property to receive the gas service. Consequently a like burden rested on the tenant under Agard to show that the latter had performed his duty in this respect.

The plaintiffs were content to prove the happening of the explosion and the consequential injury. They failed to show that Agard had discharged his duty in maintaining the connections and fittings where the explosion occurred. The plaintiffs proved that the gas stove burned in a fluctuating manner in Kelly's room and in the homes of persons residing in the vicinity just prior to the time of the accident. It was intended to show by this evidence that a greater gas pressure was being used than ordinarily. But no other gas explosion occurred from any cause in any of the several homes during the morning of the accident. The plaintiffs undertake to maintain that from the conditions testified about, as to the fluctuating flames of the stoves in the several homes in the vicinity, the presumption is that the same condition existed in Agard's room which caused the explosion. From common experience, if the doing of a certain act, under certain given conditions, ordinarily results in certain consequences, where these results are present under the given conditions, the law presumes the results occurred by doing the acts, which ordinarily give the same effect. Judson v. Giant Powder Co., supra. Instead of the proof supporting the presumption contended for by the plaintiffs, by the rule the presumption is to the contrary. As the pressure resulting in the fluctuating flames did not produce any known explosion in any other place in the vicinity, by the rule the presumption is that the condition testified about did not produce the explosion in Agard's home. As the legal presumption is that the condition testified about did not cause the explosion, the burden was on the plaintiffs to show by competent proof a causal connection between the alleged negligence, if any, as charged, and the explosion. St. L. & S. F. Ry. Co. v. Fick, 47 Okla. 530, 149 Pac. 1226; C., R. I. & P. v. Tate, 57 Okla. 215, 156 Pac. 1182; St. L. & S. F. Co. v. Rushing, 31 Okla. 231, 120 Pac. 973.

The plaintiffs have invoked the rule of res ipsa loquitur to support their judgment against the defendant. The rule asserts that whenever a thing which produced the injury is shown to have been under the managment and control of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been used, the fact of the happening of the accident creates the presumption that the accident and injury resulted from the

negligence of the defendant. Judson v. Giant Powder Co., supra ; Hart v. Washington Park Club, 157 Ill. 9, 41 N. E. 620, 48 A. S. R. 298, 29 L. R. A. 492; Cleveland R. Co. v. Hadley, 170 Ind. 204, 82 N. E. 1025, 84 N. E. 13, 16 Anno. Cas. 1, 16 L. R. A. (N. S.) 527; Anderson v. McCarthy Dry Goods Co., 49 Wash. 398, 95 Pac. 325, 126 A. S. R. 870, 16 L. R. A. (N. S.) 931; Snyder v. Wheeling Electric Co., 43 W. Va. 661, 28 S. E. 733, 64 A. S. R. 922, 39 L. R. A. 499. See notes to 6 A. S. R. 963, and 11A. S. R. 996. Literally the expression res ipsa loquitur means the "thing itself speaks." Firebaugh v. Seattle Electric Co., 40 Wash. 658, 82 Pac. 995, 111 A. S. R. 980, 2 L. R. A. (N. S.) 836.

As the plaintiff failed to make out a cause of action, there is no occasion for considering the legal effect of the ordinance pleaded by the defendant as defensive matter. The defendant questions the right of the adult brother and sister of the decedent to join in the action as plaintiffs. The deceased did not leave any children or issue of deceased children, or father or mother. This made the husband and brother and sisters the next of kin. By the provisions of section 822, Comp. Stat. 1921, an action for injury to the person does not abate by the death of the injured party. The action survives and may be maintained by the personal representative for the benefit of the estate. The proceeds of the judgment should be distributed to the next of kin as other property of the estate. Whether the next of kin has suffered pecuniary loss is immaterial. St. L. & S. F. Ry. Co. v. Goode, Admin., 42 Okla. 784, 142 Pac. 1185 ; Shawnee Gas & Electric Co. v. Motesenbocker, 41 Okla. 454, 138 Pac. 790. Section 824, Comp. Stat. 1921, creates an action for wrongful death in favor of the widow and children, if any, or the next of kin. Section 825, Comp. Stat. 1921, provides for the action to be brought by the personal representative, if one is appointed, if not, the action is to be brought by the widow, or in the absence of a widow, then by the next of kin. In an action by the next of kin, all persons who are next of kin must join in the action. Shawnee Gas & Electric Co. v. Motesenbocker, supra; M., K. & T. Ry. Co. v. Lenahan, 39 Okla. 283, 135 Pac. 383. The Shawnee Gas Company Case requires the proceeds from the judgment to be distributed to the next of kin according to the rules governing the descent of property. The right of recovery for wrongful death is confined to pecuniary loss. Kali Inla Coal Co. v. Ghinelli, 55 Okla. 289, 155 Pac. 606. The statute contemplates but one action in favor of the per-

sons who compose the next of kin. Cowan v. A., T. & S. F. Ry. Co., 66 Okla. 273, 168 Pac. 1015. The right to determine who has suffered pecuniary loss is neither for the plaintiff nor the defendant. It is a question for the court. By the statute all persons who are next of kin are required to be joined in the action, but the rule of law which confines recovery to pecuniary loss, would preclude recovery on the part of any plaintiff who could not show a legal loss. The injury as applied to the next of kin is several, and the right of each plaintiff to recover and participate in the judgment is made to depend upon the particular plaintiff being able to show pecuniary loss. While the injury is several among the next of kin, the statute makes the right of action for wrongful death a joint action. In the action by the next of kin, if the petition fails to show that some particular plaintiff has suffered pecuniary loss, or if the proof fails to so show, then in the first instance the court should sustain a motion to dismiss as to the particular plaintiff, or in the latter instance sustain a motion for directed verdict. The action of the court in either instance, unappealed, would be binding on all parties. The application of these rules is necessary in order to give effect to both the statutory provisions and the rule of law confining recovery to pecuniary damages.

It is recommended that the cause be reversed and remanded for further proceedings in accordance with the views herein expressed.

By the Court: It is so ordered.