## LONE STAR GAS CO. v. ECKEL.

No. 13571.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 22, 1937.

Rehearing Denied Dec. 10, 1937.

Thompson & Barwise and B. V. Thompson, all of Fort Worth, for appellant.

Dawson H. Davis and Homer B. Green, both of Fort Worth, for appellee.

BROWN, Justice.

Appellee brought suit against appellant, Lone Star Gas Company, and one R. E. Weir, who was alleged to be a plumber employed by Fort Worth Independent School District, for personal injuries sustained by appellee in a building owned by such school district, while he was working on the premises as a "PWA" employee; said appellee having been burned by an explosion that occurred in the school building known as an "annex" to the main building.

Appellant had been furnishing natural gas to the school district for use in its main building.

The gist of appellee's case is that while he was so employed on the premises, the school district undertook to extend its gas lines from the main building to the annex; that the piping was defectively done; that gas escaped into the room of the annex, where he was warming himself before a stove in which a wood fire had been made; and that within a few minutes after the fire was lighted, an explosion occurred which burned him severely.

Negligence is alleged on the theory that appellant, with actual knowledge, or with such information as would reasonably put a prudent person on notice, allowed the gas to flow into the extended lines in violation of the city ordinance, which reads as follows: "Section 82. Use of Piping before inspection prohibited. It shall be unlawful for any person, firm or corporation, owning or controlling any building in the City of Fort Worth, in which new gas piping may hereafter be installed, or existing gas piping altered, or any gas fitter or any oth-er person to allow gas to flow through such piping, unless the same has been inspected and tested by the Inspector of Plumbing as hereinbefore provided, and it shall be unlawful for any such person, firm or corporation to fail, refuse or neglect to pay the said Inspector of Plumbing the inspection fees hereinbefore provided for inspecting and testing such gas piping."

It is undisputed that appellant had been furnishing natural gas to the school district for use in the main building, long prior to the occasion out of which this suit grew.

It is likewise undisputed that the extensions being made on the premises were made by the plumbers employed by the school district, without any assistance from or supervision by appellant, and that same were on the property owned and controlled by the school district and that the connections were made to the gas pipes owned by the school district.

There was no evidence tending to establish actual knowledge on the part of the appellant such as would hold it responsible for the conditions complained about, and the violation of any provisions of the city ordinance, on which the suit is predicated.

The only testimony that tends to show any character of notice of the laying of the gas pipes and the connection thereof to the school district pipes, through which appellant was furnishing the school district gas, was that of several witnesses who testified that one of appellant's trucks was seen at the premises shortly before the accident; that the persons accompanying the truck changed a gas meter on the premises; and that one of such persons walked over near the extension pipes that were being laid on the premises.

Appellee contends that these facts raise the necessary issue.

This is said in appellee's brief: "While it is true that no witness in the case testified that they had told the defendant in words about the new installation work in progress at the W. J. Turner School, where this gas line was being extended from the main building to the Annex, there is sufficient evidence of probative force to show that the defendant was in position to know and possessed of such knowledge as would put a reasonable and prudent person on inquiry that the work of installing this gas line and equipment was in progress and that the line had been connected with that of the main building. Appellee contends that the de-

fendant, in this instance, had actual knowledge of these facts."

Further on in the brief the following contention is made: "Appellee submits that in order for him to recover in his action it is not necessary for him to prove that appellant had actual information of the fact that the plumbers in charge of the work for the Fort Worth Independent School District, in making the extension of this new line from the main building to the Annex at the W. J. Turner School, would fail or had failed to have the same inspected after completion of the work, by the City Plumbing Inspector of the City of Fort Worth."

The case was tried to a jury on special issues, the substance and findings made being as follows:

(1) That on January 31, 1934 (just a day or so prior to the explosion), the appellant's employees replaced a gas meter through which gas was supplied to the school district's main building.

(2) That in replacing such meter appellant's employees cut off the gas supply.

(3) That appellant's employees, after such replacement, turned on the supply of gas.

(4) That when such employees turned on the gas supply they knew that an extension of the gas line was being installed in the building known as the annex.

(5) Unanswered.

(6) That when the gas was turned on by appellant's employees the extension line to the annex had been connected with the line supplying the main building.

(7) Unanswered.

(8) Unanswered.

(9) That appellant's employees were negligent in turning on the gas supply without first ascertaining that the extension line had not been inspected, tested, and approved by the city's plumbing inspector.

(10) There was a leak in the extension line.

(11) The explosion resulted from such leak.

(12) That the negligence inquired about in issue 9 was a proximate cause of the explosion.

(13) That appellant and its employees had knowledge on January 31, 1934, that gas would be permitted to flow through the pipes in the main school building and the annex.

(14) Unanswered.

(15) That gas was permitted to flow through the pipe line from the main school building to the annex subsequent to the installation and when the pipe line had not been inspected by the city plumbing inspector.

(16) That permitting the gas to so flow was a proximate cause of the explosion.

(17) That some person other than the plaintiff did not throw kerosene, or gasoline, into the stove where the explosion occurred.

(17A) Unanswered.

(18) That defendant Weir and Erwin and Adams failed to install the gas lines and connections to the annex in a proper manner. (Erwin and Adams were Weir's helpers.)

(19) That such failure on the part of Weir et al. was not the sole proximate cause of the explosion.

(20) That the explosion was not caused solely by kerosene or gasoline.

(21) That after the gas line was installed from the main school building to the annex, Weir, or Adams, turned on the gas at the meter, on the north side of the school building.

(22) That such act of Weir, or Adams, was not the sole proximate cause of the explosion.

(23) A verdict for $15,000 was returned.

Judgment was rendered for appellee against Weir and appellant for such sum, and appellee remitted the sum of $50 on the doctor's bill, as found by the jury.

With 62 assignments of error, supported by 38 propositions, confronting us, we feel disposed to discuss only a few, as they will, in our opinion, properly dispose of the appeal.

Our analysis of the city ordinance (copied above), on which this cause is based for a recovery against the appellant, does not permit of the construction that appellee seeks to give it.

This ordinance is aimed at those who own, or control, buildings, in the city of Fort Worth, and gas fitters and other persons, who install the new pipes, or alter pipes then existing and in use.

If this ordinance, in employing the words, "It shall be unlawful for * * * any gas fitter or any other person to allow gas to flow through such piping, unless, etc.," is intended to apply to the company furnishing gas for use on the premises, and

is broad enough to include such company, then it is apparent that the whole duty of the gas company is to see to it that the ordinance is complied with, when it first makes its line connect with the premises and installs its meter. When it has done so, its duty is ended, and when the owner or person in control of the premises desires to install new pipes and make further extensions on the premises, the gas company could not be held for defects in the installation, or for a failure on the part of the workmen to comply with the city ordinance, unless actual knowledge of the conditions that make the use of gas on the premises dangerous is brought home to the gas company.

What we said in Huddleston v. Dallas Power & Light Co., 93 S.W.2d 199 (writ dismissed), is most applicable to the case at bar.

Other cases, such as Community Natural Gas Co. v. Lane (Tex.Civ.App.) 97 S.W. 2d 703, Okmulgee Gas Co. v. Kelly, 105 Okl. 189, 232 P. 428, and Portsmouth Gas Co. v. Maddox, 44 Ohio App. 288, 185 N.E. 527, support our conclusions.

We are aware of the fact that a writ of error has been granted in the case of Community Gas Co. v. Lane, supra, but that case is easily distinguishable from the case at bar in that the gas company knew the premises had been piped for two separate and distinct users, and it had theretofore furnished gas to users in both apartments, and had removed meters and installed meters, under the conditions found to obtain on the premises, and had been actually confronted with such facts as would put it upon notice and establish its plain duty to the occupants of the other apartment.

■ The doctrine of res ipsa loquitur does not apply in this suit. St. Marys Gas Co. v. Brodbeck, 114 Ohio St. 423, 151 N. E. 323.

■ The trial court has indulged too many presumptions. This cannot be done. "A presumption of fact cannot rest upon a fact presumed. The fact relied upon to support the presumption must be proved." Fort Worth Belt Ry. Co. v. Jones, 106 Tex. 345, 166 S.W. 1130, 1132; Community Natural Gas Co. v. Henley (Tex.Com.App.) 24 S.W.2d 10.

■ It cannot be said that appellant should have anticipated that the owners of the school premises would be negligent in extending its gas lines, or that they would

breach the provisions of the city ordinance in question, but it had the right to assume that the extension pipes were sufficiently secure to permit the flow of gas in them, unless it was actually put upon notice that such facts did not exist, or were given such information as would put a reasonably prudent person upon notice that defects probably existed, making the flow of gas on the premises dangerous.

If this were not a sound and necessary rule, then whenever a consumer of natural gas caused a new stove to be installed on his premises by a plumber of his own selection, the gas company could be held liable for damages resulting from a gas leak occasioned by the negligent acts of such plumber. Triplett v. Alabama Power Co., 213 Ala. 190, 104 So. 248.

No effort was made to establish the fact that appellant had any knowledge of the fact that the extension pipes had not been inspected and tested and approved.

■ Appellee seeks to hold appellant liable on the theory that it permitted its gas to continue to flow into the lines supplying the main school building, which had been tied onto the lines supplying the annex, without first ascertaining whether or not the extension pipes had been inspected and tested. We do not believe that such a premise will support a recovery.

As was said in Portsmouth Gas Co. v. Maddox, 44 Ohio App. 288, 185 N.E. 527: "Another rule, however, applies where gas escapes from a defective service line on the property of a consumer. In such case the service line is the property of the consumer and not of the gas company. The gas company in case of a defective service line is only held responsible when it has had notice of the defect and has had an opportunity to shut off the gas or remedy the defect."

We are not confronted here with a situation where appellant has never before supplied the premises with gas and has been called upon to connect the gas lines on the owner's premises with its service lines. Under such last-mentioned circumstances, one can see how, giving the broadest possible meaning to the provisions of the ordinance relied upon, appellant could be held liable for turning its gas into the consumer's pipes without first ascertaining that the provisions of the ordinance had been met.

When that is held, we have gone about as far as we believe the ordinance and a

940

fair construction of the duty imposed upon appellant will justify.

■ We cannot find any just reason to hold that the Gas Company is an insurer of the safety of the gas pipes on a consumer's premises, or of the fitness of such pipes for use.

■ For the purpose of establishing the fact that appellant cut off the gas and then turned it on again, appellee sought to prove that appellant's employees changed gas meters on the premises just before the explosion.

There was no pleading of such facts.

The submission of the issue of whether or not appellant's employees replaced the meter on the premises, even if supported by a proper pleading, could serve no better purpose under the circumstances of this case than to show that appellant's employees were on the premises where the extension pipes were being laid.

■ There was absolutely no evidence to support the further findings by the jury that these employees cut off the gas supply and then, subsequent to replacing the meter, turned it on again.

Due exceptions were made to the submission of these three issues.

We may indulge the belief that appellee was of the opinion that he could not recover, under the circumstances, and under the provisions of the ordinance in question, unless he established the fact that appellant cut off the gas and then turned it on at, or about, the time the extension lines were laid.

We cannot say that the submission of these issues constitute harmless error.

On the finding made by the jury, to the issue inquiring whether or not subsequent to the replacement of the gas meter, the employees of appellant turned the gas on in the pipes supplying the main building, hinge and hang the subsequent findings sought, viz.: In the fourth issue, whether or not appellant's employees, when they did turn on the gas supply, knew that the gas line was being extended to and installed in the annex; and the sixth issue inquiring whether or not, at such time, the extension line had been connected with the gas line in the main building; and the ninth issue inquiring whether or not appellant's employees, in turning on the gas, were negligent in not first ascertaining that the extension pipe running to the annex had not been inspected, tested, and approved by the city plumb-

ing inspector; and the subsequent issues covering the leak, the explosion resulting from the leak, and the proximate cause of such.

Likewise the finding of the jury, in answer to issue No. 13, that appellant's employees had *knowledge* of the fact "that gas would be permitted to flow through the piping in the main building, together with the piping from the main building to the annex," is not supported by the evidence. On this finding hang the issues that follow, relating to the gas being permitted to flow through the pipes (No. 15) subsequent to the installation and when the line had not been inspected by the city plumbing inspector; and No. 16, whether this act was a proximate cause of the explosion.

The act inquired about is treated as negligence per se, and we interpret the ordinance as requiring actual knowledge of the facts on the part of appellant.

No such state of facts has been shown by the evidence in this record.

■ The remaining issues have to do with the negligent acts, if any, of Weir, Erwin, and Adams, who did the piping for the school district. In each instance the jury was asked to find whether or not the negligent act found was the sole proximate cause of the explosion.

We believe such a charge is error.

If any designated act of such persons became the sole cause of the leaks and the explosion, appellant would be excused from all responsibility, regardless of the element of foreseeableness on the part of such persons.

It will be noted that inquiry was made of the jury as to whether or not Weir, or Adams, after the gas line was installed, leading from the main building to the annex, turned on the gas at the meter on the north side of the building. The jury found that this was done (issue No. 21). No effort was made to ascertain the time at which this was done, so as to place it either before or after the time when the jury was asked to find when appellant changed the meters, or when appellant turned on the gas, after the meter was changed.

■ Assuredly, if Weir or Adams, employees of the school district, cut off the gas and made the line extension to the annex and then turned on the gas, without the knowledge or consent of appellant, no liability on the part of appellant could be shown.

Other interesting questions are raised which we will not discuss, in view of the errors pointed out, and may not occur at another trial.

For the errors discussed, and because the case has not been properly tried, and may not have been fully developed, we shall follow the rule laid down for us by the Supreme Court and order the judgment of the trial court reversed and the cause remanded as to appellant; and the defendant Weir not having appealed, the judgment against him is undisturbed. It is so ordered.