**NORTH BRITISH & MERCANTILE INS. CO., Limited, v. CONSOLIDATED GAS UTILITIES CORPORATION et al.**

No. 3555.

Circuit Court of Appeals, Tenth Circuit.

Feb. 28, 1948.

Walter D. Hanson, of Oklahoma City, Okl. (F. A. Rittenhouse, John F. Webster and Olive R. Rittenhouse, all of Oklahoma City, Okl., on the brief), for appellant.

Gus Rinehart, of Oklahoma City, Okl. (Butler & Rinehart, of Oklahoma City, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

The North British & Mercantile Insurance Company, Limited,[1] brought this action against the Consolidated Gas Utilities Corporation[2] to recover in subrogation the amount paid upon a policy of fire and explosion insurance for the destruction of a dwelling house owned by W. M. Hutchins. The policy contained a subrogation clause. The Insurance Company alleges that the explosion which damaged the property was caused by the negligence of the Gas Corporation.

Hutchins, the insured and owner of the dwelling house, testified to these facts: He was employed by the Shell Pipe Line Corporation as an engineer at its station in Cushing, Oklahoma. In January, 1945, he purchased the dwelling house which was located at 507 E. Broadway, Cushing, Oklahoma; he formerly lived at 318 E. Fifth, Cushing, Oklahoma; he started to move into the dwelling house about 9 a. m., February 22, 1945, and finished moving about 4 o'clock in the afternoon of that day. He called the Gas Corporation by telephone about 9 or 9:30 on the morning of February 22, 1945, and advised it that he was moving from 318 E. Fifth to 507 E. Broadway, and that he wanted the gas shut off at the former location and the meter moved to the new location, and that he thought he would fin-

---

[1] Hereinafter referred to as the Insurance Company.

[2] Hereinafter referred to as the Gas Corporation.

ish moving about 4:30 in the afternoon of that day. He placed his electric refrigerator in a small room between the dining room and the kitchen. He connected the gas range in the kitchen. In so doing, he installed a nipple that was so short that the gas could not be turned on. While he was looking for another nipple, Fuqua, an employee of the Gas Corporation, came to the door of the dwelling house and told Hutchins that he was not moving the meter, that he had checked everything, and was ready to turn on the gas. Hutchins stated that he had a connection to make. Fuqua then stated that it was almost his quitting time and there was nothing to do but turn on the gas. Hutchins then installed another nipple and turned on the gas. A Mr. Galloway was assisting Hutchins. When the gas was turned on, Galloway told Hutchins he detected a little odor. They then examined the connections which Hutchins had made and concluded the gas was coming from the pilot light in the gas range. They then adjusted the pilot light. The former occupant, on moving out of such dwelling house, disconnected his gas refrigerator from a half-inch pipe, or riser, in the small room where Hutchins had placed his electric refrigerator. The riser was open. About 10:45 p. m., February 22, 1945, a gas explosion occurred and it and the ensuing fire destroyed the dwelling house.

At the close of the Insurance Company's evidence, the Gas Corporation moved for a directed verdict. The trial court held there was not sufficient evidence to take the case to the jury and dismissed the action. The Insurance Company has appealed.

These principles are settled by the adjudicated cases in Oklahoma:

■ Where a gas company, engaged in furnishing gas for domestic purposes, lays its line reasonably suited for the purpose to the property line of the consumer and the consumer installs and maintains the lines and connections on his property, no duty rests upon the gas company to inspect the pipe-line and connections of the consumer, unless it has contracted so to do, or unless it has actual notice of defects therein.

■ A gas company which does not install the pipes in the consumer's building, and which has no control over them, is in nowise responsible for the condition in which they are maintained, and is not liable for injuries caused by leaks therein, of which it has no knowledge.

■ Where the gas pipes and fittings on the property of the consumer belong to the consumer and there is no contractual duty resting on the gas company to inspect them, the consumer, by application for gas service, assumes the burden of inspecting the pipes and fittings on his property and of maintaining them in a manner reasonably suited to meet the required service, and the gas company has the right to assume that these duties have been performed by the applicant.[3]

■ Under the facts in this case, the sole obligation of the Gas Corporation was to inspect the meter and the connections therewith.[4] Having no actual notice of defects, the Gas Corporation was under no obligation to inspect the pipes and connections on Hutchins' property. That duty rested upon Hutchins, and the Gas Corporation had the right to assume that he had performed it.

It follows that the evidence failed to establish negligence on the part of the Gas Corporation and that it was entitled to a directed verdict in its favor.

The judgment is, therefore, affirmed.

[3] Okmulgee Gas Co. v. Kelly, 105 Okl. 189, 232 P. 428, 430; Price v. Mac-Thwaite Oil & Gas Co., 177 Okl. 495, 61 P.2d 177, 179. See, also, Lewis v. Southern California Gas Co., 92 Cal. App. 670, 268 P. 930, 933.

[4] Okmulgee Gas. Co. v. Kelly, 105 Okl. 189, 232 P. 428, 430; Price v. Mac-Thwaite Oil & Gas Co., 177 Okl. 495, 61 P.2d 177, 179; Phillips v. City of Alexandria, 11 La.App. 228, 123 So. 510, 513; Clare v. Bond County Gas Co., 356 Ill. 241, 190 N.E. 278, 279, 280; Notes, 138 A.L.R. 883; 90 A.L.R. 1088; 29 A. L.R. 1252; 25 A.L.R. 272.