PACT GAS CO. v. BAKER et ux.

No. 34064. May 23, 1950.

*218 P. 2d 912.*

Brown Moore, A. R. Swank, A. R. Swank, Jr., and E. C. Swank, all of Stillwater, for plaintiff in error.

R. L. Hert and Guy L. Horton, both of Stillwater, for defendants in error.

CORN, J. Plaintiffs, husband and wife, sued defendant, a public utility company engaged in selling and delivering natural gas in Perkins, Okla., to recover damages for the loss of their residence and personal property from a gas explosion, alleged to have resulted from defendant's negligence.

The petition alleged defendant's corporate existence as a public utility operating under a franchise from the town of Perkins, and the use of old, leaky pipes as part of its distribution system; that a part of this system was a two-inch main located in the public street adjacent to plaintiffs' property.

Further, that during extreme cold weather in February, 1948, defendant carried heavy gas pressure in its lines, causing numerous leaks to occur; that on February 10th plaintiff (Mr. Baker) notified defendant's manager (Huls) and repair crew foreman (Jamison), of the existence of a leak in the line, approximately 45 feet northeast of his residence; that defendant's agents went to this leak, but did not repair same; that the surface of the ground was frozen and covered with snow so that the leaking gas could not escape into the air, but was forced through the soil under the frozen crust to a large tree on plaintiffs' property, from which point it followed a large tree root up close to the foundation of the house and then found its way into a rodent hole under the foundation and accumulated under the northeast corner of the house.

February 13, 1948, plaintiff discovered a small leak in the bathroom stove connection, located in the southwest corner of the house, and made arrangements with a plumbing company to have this fixed. About 11:30 that day the company sent its employee, Savage, to Mr. Baker's home to make the repairs. This particular leak was repaired and the plumber then set about adjusting the other stoves and testing them for leaks. While testing the line in the northeast bedroom, where the pipe went under the floor, by lighting a match, an explosion occurred, causing the damages for which plaintiffs sought judgment. The explosion, fire, and resultant damages were alleged to have been the direct and proximate result of defendant's negligence in that:

(1) There was a failure to exercise reasonable care under the circumstances.

(2) Defendant failed to use the high degree of care imposed upon it in handling a dangerous agency.

(3) Defendant failed to regularly inspect its lines and repair the leaks, particularly this one leak.

(4) City ordinances were violated by defendant in failing to keep its lines in good repair.

(5) Defendant failed to promptly shut off the gas or repair the leak after being given notice.

(6) Defendant failed to warn plaintiffs of danger resulting from the leak in its high pressure line.

Defendant's answer denied that it was negligent in any manner, and alleged that the explosion and damages resulted from the negligence of plaintiffs and their agent, or employee, Savage, who, in the course of testing for leaks, knowingly and carelessly lit a fire in the house knowing there was a gas leak therein, which he had been employed to repair, and that but for such negligence the explosion and damage would not have occurred.

Plaintiffs' amended reply denied the explosion was caused by or contributed to by plaintiffs' lack of care, denied the negligence of Savage, or that he was plaintiffs' agent or employee, but, in fact, was the agent and employee of the plumbing company. The reply was verified.

The issues made by the pleadings were tried to a jury. Plaintiffs' evidence was directed toward showing that the gas which caused the explosion had come from the leak in defendant's high pressure line in the street adjacent to plaintiffs' house. Defendant based its case on the theory that the gas which caused the explosion had collected under the house from a leak in plaintiffs' service line.

No issue is made concerning the extent of the damages, or the value of the property destroyed by the resulting fire.

The plaintiffs' evidence showed that the service line which connected with defendant's main line was 39 feet long, to the point where it went under the north foundation of the house. The defendant's main line carried a pressure of 40 pounds to the square inch, while the service line carried 8 ounces per square inch. The leak in defendant's main line was 45 feet from the northeast corner of the house. The section of the main line where the gas was leaking, introduced at the trial as an exhibit, showed at least four holes the size of an ordinary pin head or larger. The evidence was that prior to the explosion the presence of escaping gas had been detected in the vicinity where this leak was found. There was further testimony that defendant's manager stated the next day after the fire that it was apparent the main line was leaking, and that they would repair it, and if the fire from the hole under the foundation stopped then they would know they had found the source of the trouble. Defendant's employees uncovered the main line and attempted to stop the leak by the use of clamps.

This effort was unsuccessful and the line was finally repaired the next day by cutting out the defective pipe and welding in a new one.

After the explosion the plaintiffs, accompanied by their attorney, a plumber, and other witnesses, examined the property. The presence of leaking gas was discovered under the floor of the wrecked house. Investigation revealed that gas was escaping into water which had accumulated under the house. It was found that a gas pipe which entered the north foundation under the dining room, but which was not connected to a stove, had been broken and the gas detected in that area was coming from this pipe. Plaintiffs' evidence was that this pipe appeared to have been broken off by the explosion thus permitting gas to escape under this portion of the building. It was the defendant's theory that the gas which caused the explosion had been accumulating under the house from a leak in this service pipe. Considerable testimony was offered by defendant to show that the break in this pipe was old and that the pipe had been in this condition for some time. After this leak was discovered the meter was cut off and the leak stopped.

After this was done the parties still were able to detect escaping gas in the northeast corner of the house. Investigation revealed that there was a rodent hole that came up under the foundation at the northeast corner of the house. From the exhibits it appears that this was at a distance of approximately 30 feet from the leak found under the kitchen floor following the explosion. Detecting the presence of escaping gas in the vicinity of the rodent hole, the debris was cleared away and a lighted match applied, whereupon the escaping gas caught fire at the point and a steady blaze, 12 to 15 inches or more in height, flamed up. This fire burned until put out Saturday night, and also burned steadily when lighted on the following day. At that time escaping gas was observed still bubbling in the slush near the tree

close to the northeast corner of the house. However, after the earth was uncovered from defendant's main line where the leak was located, the hole under the foundation could not be lighted and no further gas could be detected in the area of the large tree.

Plaintiffs' witness, Bradley, an experienced plumber, testified that he inspected the premises following the explosion (next day), but, after checking the premises and the meter, was unable to determine why the explosion occurred. However, the witness was present and observed the lighting of the gas in the hole under the foundation. On cross-examination he testified that it was his conclusion that the gas which caused the explosion escaped from this hole, although he admitted that after observing the hole he made no effort to follow the same to its source to determine from whence the gas supplying this hole might be coming.

There was further evidence that the rodent hole was followed outside the foundation and to a root of the tree outside the house, and that about six feet of the tree root was dug up, which root led into the area where gas bubbles had been observed rising to the surface.

Defendant's evidence was as follows: The soil in the area was too hard to permit the gas escaping from the main line leak to permeate ground and move toward plaintiffs' house; and that escaping gas would not permeate the soil, but would rise to the surface as quickly as possible and be dissipated into the air. The soil in which the main line was buried was firm and there were no holes in the ground to carry the gas toward the house, and gas will not travel laterally but tends to rise to the surface immediately; that the fact gas bubbles were observed in the area near the tree tended to show that gas from the leak was escaping into the atmosphere. Further, that gas from the small holes in the main line, buried

two feet under the surface, could not travel the distance (45 feet) and get under the house. The break in plaintiffs' service line, such pipe being offered in evidence, showed that it was an old break. Gas escaping from any source under the house would tend to spread out in all directions, going down into holes under the floor and up into sides of the building. Inspection revealed that leakage had existed in the neighborhood of the meter and from the service line connected with the meter into the house, such condition being shown by the condition of the soil and lack of vegetation in the area. The leakage occurred from the service line, and this gas would have tended to distribute itself in the soil under the house and remain there until it had some way to escape. The above evidence, elicited from both lay witnesses and others testifying as experts, was corroborated by extensive testimony cumulative in nature.

Defendant first contends that the plumber, Savage, was negligent in using a lighted match to find the gas leak, and that his negligence was imputed to plaintiffs. It is argued that Savage was employed by plaintiff Baker and so was his agent and employee. Plaintiffs made a verified denial of the allegation of agency. The testimony was that Baker talked with Savage's employer, who directed him to go and fix the leak at plaintiffs' residence. Upon arrival plaintiff told him where the leak was, but did not further direct him in the work, and only walked into the bedroom where the explosion occurred. Both Savage and Baker testified fire was burning in this bedroom, although defendant urges that the fact of the violence of the explosion destroys such testimony. And, defendant insists they both knew gas was present in large quantities and that knowing this it was negligence to use a lighted match. There was no evidence that they detected the presence of escaping gas under this bedroom, or that the fire

was not burning, and such facts are not to be established by pointing out as a negative proposition that the stove could not have been burning, otherwise, the explosion would have occurred earlier. Where the evidence is in conflict, the issue of agency is a fact question for the jury's determination and must be established as other facts necessary to be proved. Tulsa County Truck and Fruit Growers Ass'n v. McMurphey, 185 Okla. 132, 90 P. 2d 927.

The issue as to the existence of contributory negligence was submitted to the jury for consideration under the trial court's instructions. The case of Pine Bluff Water & Light Co. v. Schneider, 62 Ark. 109, 34 S.W. 547, relied upon by defendant, is inapplicable to the question herein presented. In that case a store owner sued both the gas company and his own employee who had ignited a gas leak while testing for it with a match. The plaintiff was held to be bound by the allegations of negligence on the part of his own employee.

In Webb v. City of Chanute, 118 Kan. 505, 235 P. 838, the syllabus states:

"Where a city supplying natural gas to its inhabitants, negligently permits gas to escape from its pipes into a building, which gas is ignited, with resulting injury, by an independent workman called in to repair the pipes striking a match, the act of the workman is not such an independent, intervening cause of the injury as will relieve the city from liability."

Both phases of the argument presented under this contention were passed upon by the jury. No error appears in the result reached by the jury.

The second contention is that the evidence was insufficient to establish that the gas which caused the explosion came from defendant's line.

The evidence established that defendant's high pressure line was leaking before the explosion and defendant was notified to this effect. Following the explosion gas continued to escape into the air between the house and defendant's main line. The explosion occurred in the part of the house nearest the leak. Following the explosion, and after plaintiffs' service line was completely disconnected from the meter, the hole under the foundation would still burn, and gas continued to escape therefrom until defendant's line finally was repaired. Opposed to such evidence was defendant's testimony that it would have been impossible for gas to have collected and caused the explosion in the manner alleged, and that the appearance of the broken service line indicated an old break in such line, and that this undoubtedly was the source of the gas which caused the explosion. The evidence was in irreconcilable conflict and presented a question of fact. Thus the question as to the existence of negligence, and whether such negligence was the proximate cause of the injury sustained, was for the jury to determine from such conflicting evidence. Oklahoma Natural Gas Co. v. Courtney, 182 Okla. 582, 79 P. 2d 235. And, where there is competent evidence to sustain the jury's verdict, the same will not be disturbed on appeal. Oklahoma Ry. Co. v. Hentzen, 200 Okla. 364, 194 P. 2d 847; Cole v. Harvey, 200 Okla. 564, 198 P. 2d 199.

Under the third contention it is urged that if the gas which caused the explosion came from plaintiffs' service line, then defendant could not be liable, since defendant was under no duty to repair this service line. Under the rule laid down in Okmulgee Gas Co. v. Kelley et al., 105 Okla. 189, 232 P. 428, undoubtedly this is correct. However, such argument fails to recognize that defendant's theory as to the cause of the explosion was rejected by the jury, who determined from the evidence that the explosion resulted from an accumulation of gas from the leak in defendant's main line, and not from a leak in the service line.

Defendant next contends that the fact an explosion occurred raises no presumption same resulted from defendant's negligence. Defendant relies upon Franklin v. Skelly Oil Co., 141 F. 2d 568, 153 A.L.R. 156, wherein recovery was denied in an action brought to recover damages from an explosion alleged to have resulted from the company's negligence in installing a butane gas system by making connection with pipes formerly used as a natural gas system, unsuited for transmission of butane gas. The court pointed out that the fact of the explosion created no presumption of negligence, but that such had to be proved, as well as that such negligence was the proximate cause of the explosion and resulting damages. The court then stated that the evidence was such that it did not establish whether the explosion resulted from a gas leak from a connection for which the company was responsible; or from a leak in a connection made by another party. And, under such circumstances, the evidence merely indicated two separate probabilities, without there being positive evidence to show which of the two caused the explosion, which could not constitute evidence.

Defendant again urges the insufficiency of the evidence to establish the reason for the explosion in the present case, and concludes that the matter must be determined under the rule in the Skelly case, supra, as the proven facts give equal support to two inconsistent inferences, neither of which was established by the evidence. The evidence of the circumstances surrounding the explosion has been noted and it is unnecessary to weigh the sufficiency of the testimony, other than to point out that plaintiffs established, by positive testimony, the physical facts and a continuing chain of circumstances showing defendant's negligence and a causal connection between such negligence and the injury sustained.

It is further contended that the trial court erred in giving instruction No. 8, wherein the court instructed on contributory negligence and advised the jury that any negligence of Savage (the plumber) could not be imputed to plaintiffs unless the jury found that he was the plaintiffs' agent or employee. The assertion is made that no disputed question of fact existed on the question of agency. The matters relating to the allegation of agency have been noted and do not require further consideration. Under the record, the giving of this instruction was more favorable to defendant than to plaintiffs. In such instances a party cannot complain that an instruction was erroneous. Farmers State Bank v. Bush, 190 Okla. 405, 124 P. 2d 385.

Defendant also claims error in the trial court's refusal of defendant's requested instruction No. 5, which apparently was based upon the rule in the Skelly case, supra. The trial court's instructions sufficiently advised the jury that their verdict could not be based upon conjecture or speculations, and prescribed the limitations within which it would be possible to find for plaintiffs.

Judgment affirmed.

Plaintiffs have asked judgment upon the supersedeas bond executed herein and judgment accordingly is rendered thereon.