**Rosendo MUNIZ, Sr., Eunice Lee Muniz, Rosendo Muniz, Jr., Diana Muniz and Rosendo Muniz, Sr., as Personal Representative of the Estate of Mary Jane Muniz and Josephine Lynn Muniz, Deceased and Guadalupe Muniz, Plaintiffs,**

v.

**MASCO CORPORATION, American Metal Products Corporation, a division of Masco Corporation, Brass Craft Manufacturing Company and Lone Star Gas Company, a division of Enserch Corporation, and Enserch Corporation, Defendants.**

CIV 89–1488–R.

United States District Court,
W.D. Oklahoma.

May 16, 1990.

James A. Rasmussen, Bob Balch, Kenneth Johnson and Charles E. Perry, John &

Associates, P.C., Wichita Falls, Tex., for plaintiffs.

Earl D. Mills and Bill M. Roberts, Mills, Whitten, Mills, Mills & Hinkle, Stephen M. Morris, Ted A. Ross, Arthur W. Schmidt, Michael J. Blaschke and Helen Speer Chinn, Mahaffey & Gore, P.C., Oklahoma City, for defendants.

## ORDER

DAVID L. RUSSELL, District Judge.

This matter is before the Court on the motion for summary judgment of Defendants Lone Star Gas Company and Enserch Corporation (hereinafter collectively referred to as "Lone Star") and Plaintiffs' motion for partial summary judgment as to liability against these Defendants.

This case arises out of a mobile home fire in the early morning hours of March 10, 1989, which resulted in the deaths of Mary Jane Muniz and Josephine Lynn Muniz. Plaintiffs allege the fire was caused by natural gas leaking from a defective gas appliance connector in the mobile home. Lone Star was supplying natural gas to the Plaintiffs' mobile home on the date of the accident. Plaintiffs assert claims against Lone Star based on product liability (Count I), negligence (Counts II and IV), and breach of warranty (Count III).

In Oklahoma, a product liability cause of action lies only against a manufacturer, seller, or supplier of a defective product. *Kirkland v. General Motors Corporation*, 521 P.2d 1353, 1355 (Okl. 1974). It is undisputed that Lone Star was neither the manufacturer, seller, nor supplier of the allegedly defective connector. Therefore Plaintiffs' product liability claim against Lone Star cannot stand.

Plaintiffs assert that Lone Star was negligent in failing to warn them of the danger of using an uncoated brass connector to supply gas to their cook stove, and for failure to shut off their gas until the defect was corrected. A natural gas utility company's duties with respect to a customer's lines, fittings, and appliances has been defined in several Oklahoma cases. A gas company is clearly respon-

sible to inspect and keep safe its own lines and fittings, up to the discharge side of its meter. However, without actual notice of a defect, a gas company has no duty to inspect a customer's lines and fittings. *Okmulgee Gas Co. v. Kelly,* 105 Okl. 189, 232 P. 428 (1924); *Price v. MacThwaite Oil & Gas Co.,* 177 Okl. 495, 61 P.2d 177 (1936). The gas company is not liable for injury resulting from explosions due to defects of pipeline, gas connections, and fittings on the property of the consumer unless it has actual notice of such defects. *Kelly,* supra 232 P. at 430. The consumer, by application for gas service, assumes the burden of inspecting and maintaining in a safe condition the pipe and fittings on his property, and the gas company has the right to assume that this duty will be performed. *Id.* A gas company, which does not install its customers' pipes and has no control over them, is in no way responsible for the condition in which they are maintained, and is not liable for injuries caused by leaks therein, of which it has no knowledge. *North British and Mercantile Ins. Co. v. Consolidated Gas Utilities Corp.,* 166 F.2d 398 (10th Cir.1948).

The allocation of responsibility between the gas company and consumer was legislated by the Oklahoma Corporation Commission, the state agency charged with regulating gas utility companies by 17 O.S. § 152, as follows:

[A]ll gas lines, pipes, and equipment owned by the consumer shall be maintained in safe, efficient and proper condition by and at the expense of the consumer.

Corporation Commission Reg. 6(D).

That the gas companies shall operate and maintain in safe, efficient and proper condition all of its facilities and instrumentalities used in connection with the transmission, distribution, storage, regulation, measurement, and delivery of gas to each consumer up to and including the point of delivery into the piping owned by the consumer. Unless otherwise agreed by the utility and consumer, the point of delivery shall be at the outflow side of the meter.

Corporation Commission Reg. 6(A).

Plaintiffs had last complained to Lone Star about their gas service in March 1985, four years prior to the subject fire. The complaint at that time was about a high bill, and a Lone Star representative inspected Plaintiffs' fittings and appliances and found no leaks or other defects. It is undisputed that Lone Star was not notified by Plaintiffs subsequent to March 1985 of any leaks or gas-related problems. Therefore, under the above authority, Lone Star was under no duty to Plaintiffs to inspect their fittings for defects.

■ Plaintiffs maintain, however, that Lone Star had notice of a dangerous condition in Plaintiffs' home in March 1985, because Plaintiffs' cook stove was fitted with an uncoated appliance connector when the then-current standard of the American Gas Association ("AGA") and American National Standards Institute ("ANSI") for appliance connectors required coatings on such connectors. However, the standard requiring coating became effective in 1975, and Plaintiffs' connector was manufactured in 1972. Furthermore, the evidence before the Court is that the newly-adopted ANSI standard did not apply retroactively, or require removal of any existing uncoated connectors in use by consumers. Indeed, the non-retroactivity of ANSI standards is conceded by Plaintiffs' own expert witness, O.C. "Red" Davis. Lone Star's April 23, 1990 Response to Plaintiffs' Motion for Partial Summary Judgment, Ex. F, p. 35–56. The 1975 ANSI standard applied only to connectors manufactured after its effective date. Plaintiffs have advanced no authority for the proposition that a gas utility company must insure that its customers' appliances, fittings, and connections must be in continual compliance with the latest issued manufacturer's standards or building codes. The absence of such authority, together with the case law and Corporation Commission rules allocating the duty of maintenance of a consumer's fittings to the consumer, compel this Court to reject this argument of Plaintiffs.

Plaintiffs also argue that Lone Star assumed a duty, by its company operations manual and practice, of inspecting its customers' connections for code compliance and of warning of noncompliance. However, the fact that Defendant may have voluntarily undertaken on occasions to inspect its customer's fittings does not impose any legal duty on Defendant to do so. Plaintiffs advance no authority to support their "assumption of duty" theory. Furthermore, Plaintiffs have submitted no evidence of an industry custom to warn gas customers not to use uncoated connectors. There is no evidence that Lone Star or any other gas utility assumed a duty to warn in this regard.

The natural gas utility industry in Oklahoma is regulated by the Legislature through the Corporation Commission. The Corporation Commission has carefully allocated the duties and liabilities between consumers and utility companies with respect to the maintenance and safety of gas piping and fittings. Any extension of duty or reallocation of liability is properly left to the Legislature and Corporation Commission, and should not be undertaken by this Court.

Plaintiffs also allege that their damages were caused by Lone Star's negligence in insufficiently odorizing the gas delivered to Plaintiffs' home. Lone Star's odorizer inspection reports for March 1, 1989 and April 1, 1989 both showed sufficient odorant available. In addition, a witnessed test conducted on Plaintiffs' premises on the morning of the fire, March 10, 1989, confirmed that the gas was sufficiently odorized on the day of the fire. Plaintiffs attempt to controvert this evidence by testimony of survivors of the fire that they did not smell gas in the home prior to the fire. However, the fire occurred in the early morning hours of the day, while the occupants would be expected to be sleeping. Furthermore, the alleged gas leak occurred in the kitchen at the connector to the cook stove. The gas was supposedly ignited by the pilot light on the stove. Plaintiffs have not shown either that leaking gas would have awaken sleeping occupants before it ignited, or that odorized gas would have been smelled in the bedrooms if the occupants were awake, in view of the fact that the alleged leak and source of ignition were both close together in the kitchen. The evidence presents no genuine issue of material fact with respect to whether Plaintiffs' gas was sufficiently odorized.

For the above stated reasons, Lone Star's motion for summary judgment is hereby GRANTED, and Plaintiffs' motion for partial summary judgment is DENIED. Fed.R.Civ.P. 56(c).

IT IS SO ORDERED.